# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **TENREC, INC.**, **SERGII SINIENOK**, **WALKER MACY LLC**, **XIAOYANG ZHU**, <br><br> Plaintiffs, <br><br> v. <br><br> **UNITED STATES CITIZENSHIP AND IMMIGRATIONS SERVICES**, **LEON RODRIGUEZ**, Director, U.S. Citizenship and Immigration Services. <br><br> Defendants. | Case No. 3:16-cv-995-SI <br><br> **OPINION AND ORDER** |

Brent W. Renison, PARRILLI RENISON LLC, 610 S.W. Broadway, Suite 505, Portland, OR 97205. Of Attorneys for Plaintiffs.

Benjamin C. Mizer, Principal Deputy Assistant Attorney General; William C. Peachey, Director; Glenn M. Girdharry, Assistant Director; and Joshua S. Press, Trial Attorney, UNITED STATES DEPARTMENT OF JUSTICE, OFFICE OF IMMIGRATION LITIGATION, District Court Section, P.O. Box 868, Ben Franklin Station, Washington, DC 20044. Of Attorneys for Defendants.

**Michael H. Simon, District Judge.**

Plaintiffs Tenrec, Inc. and Walker Macy LLC (collectively, the "Employer Plaintiffs"),

and Plaintiffs Sergii Sinienok and Xiaoyang Zhu (collectively, the "Individual Plaintiffs"), bring

this putative class action against U.S. Citizenship and Immigration Services ("USCIS") and its

director, Leon Rodriguez, in his official capacity. Plaintiffs allege that USCIS improperly

administers its H-1B specialty occupation nonimmigrant visa worker program in violation of federal law.[1] Defendants move to dismiss Plaintiffs' complaint for lack of subject-matter jurisdiction. Defendants argue that the Individual Plaintiffs do not have standing because only employers have standing to challenge the H1-B visa program and that the Employer Plaintiffs do not have standing because they do not allege sufficient facts showing injury or that any injury is judicially redressable. Defendants also argue that Plaintiffs' claims are time-barred because the regulations that Plaintiffs challenge were issued more than six years ago. For the following reasons, Defendants' motion is denied.

## STANDARDS

Federal courts are courts of limited jurisdiction. *Gunn v. Minton*, 133 S. Ct. 1059, 1064 (2013) (citation omitted). As such, a court must presume "that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted); *see also Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009); *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

A motion to dismiss for lack of subject matter jurisdiction brought under Federal Rule of Civil Procedure 12(b)(1) may be either facial or factual. *See Safe Air for Everyone*, 373 F.3d at 1039. A facial attack on subject matter jurisdiction is based on the assertion that the allegations contained in the complaint are insufficient to invoke federal jurisdiction. *Id.* "A jurisdictional challenge is factual where 'the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction.'" *Pride v. Correa*, 719 F.3d 1130,

---

[1] The H-1B program takes its name from 8 U.S.C. § 1101(a)(15)(H)(i)(B), which defines a class of nonimmigrant alien workers eligible to work in the United States temporarily to perform services in "specialty occupations." *See* 8 C.F.R. § 214.2(h)(1)(i) and (ii)(B) (noting that these visas are called "H-1B" and describing the H-1B classification).

1133 n.6 (9th Cir. 2013) (quoting *Safe Air for Everyone*, 373 F.3d at 1039)). When a defendant

factually challenges the plaintiff's assertion of jurisdiction, a court does not presume the

truthfulness of the plaintiff's allegations and may consider evidence extrinsic to the complaint.

*See Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1131 (9th Cir. 2012); *Robinson*, 586 F.3d

at 685; *Safe Air for Everyone*, 373 F.3d at 1039. A factual challenge "can attack the substance of

a complaint's jurisdictional allegations despite their formal sufficiency." *Dreier v. United

States*, 106 F.3d 844, 847 (9th Cir. 1996) (citation and quotation marks omitted). The Court must

dismiss any case over which it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3).

## BACKGROUND

### A. H-1B Visa Program

Employers in the United States may petition for a nonimmigrant work visa under the

H-1B program when they seek to employ foreign workers in specialty occupations that require

theoretical or practical application of a body of highly specialized knowledge, including but not

limited to architecture, engineering, medicine, law, and other fields that require the attainment of

a bachelor's degree or higher. 8 U.S.C. § 1101(a)(15)(H)(i)(b); 8 C.F.R. § 214.2(h)(4)(ii). To

petition for an H-1B visa, the employer must submit a Form I-129, Petition for Nonimmigrant

Worker. The employer also must file a Labor Condition Application that has been certified by

the Department of Labor ("DOL"). *See* 8 C.F.R. 214.2(h)(4)(i)(B)(1).

Congress has limited the number of H-1B visa petitions that may be granted in any given

fiscal year.[2] This is commonly referred to as the H-1B "cap." The current annual limit for H-1B

visa petitions subject to the cap is 85,000. Of these, 65,000 visa petitions are subject to the

---

[2] The federal government's fiscal year is the 12-month period ending on September 30th of that year, having begun on October 1st of the previous year. Thus, Fiscal Year 2017, or FY 2017, runs from October 1, 2016, through September 30, 2017.

"regular cap," with an exemption for the first 20,000 workers who have earned a master's or higher degree from a United States institution of higher education (the "master's cap"). *See* 8 U.S.C. § 1184(g). [3]

The annual "regular cap" of 65,000 was first set by Congress in 2004. Every year since then, USCIS has received more H-1B petitions than may be approved within the congressionally-set limitations. Indeed, USCIS often receives more petitions during the first five business days in which petitions for that year may be submitted than may be granted during the entire year. As alleged by Plaintiffs, the USCIS physically received the following number of H-1B petitions during the following five-day filing windows:

| FY | End of five-day filing window | Number of H-1B Petitions Received |
|----|-------------------------------|-----------------------------------|
| 2014 | April 7, 2013 | 124,000 |
| 2015 | April 7, 2014 | 172,500 |
| 2016 | April 7, 2015 | 233,000 |
| 2017 | April 7, 2016 | 236,000 |

The statute governing H-1B visas states: "Aliens who are subject to the numerical limitations of paragraph (1) shall be issued visas (or otherwise provided nonimmigrant status) *in the order in which petitions are filed* for such visas or status." 8 U.S.C. § 1184(g)(3) (emphasis added). H-1B petitions are submitted in hard copy via U.S. mail, sent to a specific mailing center based on the geographic location of the employer.

In 2005, USCIS adopted rules changing its procedures for accepting and processing H-1B petitions. Among other things, the new rules authorized, if needed, the use of a random computer

_____

[3] Some H-1B visa petitions are not subject to the Congressional limitation. These are known as "cap-exempt" petitions. In addition, some H-1B visas are set aside under legislation implementing certain free-trade agreements. Neither are relevant to this lawsuit.

selection process. *See* Allocation of Additional H-1B Visas Created by the H-1B Visa Reform Act of 2004, 70 Fed. Reg. 23775, 23778, 23783 (May 5, 2005) (codified at *former* 8 C.F.R. § 214.2(h)(8)(ii)(B) (Jan. 1, 2006)). Under these procedures, USCIS estimated the number of petitions it would need to fill the 85,000 slots, monitored the number of petitions received, and notified the public of the date that USCIS had received the necessary number of petitions (the "final receipt date"). Only applications received before the final receipt date were part of the random computer selection, unless the final receipt date was the very first day applications could be received, in which case applications on both the first and second day were part of the selection process.

In 2008, these procedures were again changed with the adoption of new rules. *See* Petitions Filed on Behalf of H-1B Temporary Workers Subject to or Exempt from the Annual Numerical Limitation, 73 Fed. Reg. 15,389 (Mar. 24, 2008) (codified at 8 C.F.R. § 214.2(h)(8)(ii)(B)). USCIS had found that stopping consideration of petitions received after the final receipt date caused employers to spend significant effort and money to send petitions by overnight delivery for receipt by USCIS on the first allowable date. *Id.* at 15,391. This also caused problems for overnight delivery carriers and for USCIS offices receiving petitions. *Id.* Thus, USCIS changed the procedure to include in the computer selection process all petitions received within the first five business days. *Id.* at 15,392 ("This will eliminate filing problems resulting from a rush of filings made on the first day on which employers may file petitions for the upcoming fiscal year. USCIS has determined that a filing period of five business days is sufficient to account for a wider range of mail delivery times offered by the various mail delivery providers available to the public." (citation omitted)).

The new procedure involving the computer selection process, which is the current procedure challenged by Plaintiffs, provides:

> When necessary to ensure the fair and orderly allocation of numbers in a particular classification subject to a numerical limitation or the exemption under section 214(g)(5)(C) of the Act, USCIS may randomly select from among the petitions received on the final receipt date the remaining number of petitions deemed necessary to generate the numerical limit of approvals. This random selection will be made via computer-generated selection as validated by the Office of Immigration Statistics. Petitions subject to a numerical limitation not randomly selected or that were received after the final receipt date will be rejected. Petitions filed on behalf of aliens otherwise eligible for the exemption under section 214(g)(5)(C) of the Act not randomly selected or that were received after the final receipt date will be rejected if the numerical limitation under 214(g)(1) of the Act has been reached for that fiscal year. . . . If the final receipt date is any of the first five business days on which petitions subject to the applicable numerical limit may be received (i.e., if the numerical limit is reached on any one of the first five business days that filings can be made), USCIS will randomly apply all of the numbers among the petitions received on any of those five business days, conducting the random selection among the petitions subject to the exemption under section 214(g)(5)(C) of the Act first.

8 C.F.R. § 214.2(h)(8)(ii)(B).

## B. Plaintiffs' Petitions

To petition for an H-1B visa for an employee to start the first day of a fiscal year, October 1, the earliest that the petition can be filed is April 1 of the preceding fiscal year. 8 C.F.R. 214.2(h)(9)(i)(B). The Employer Plaintiffs each filed a Form I-129 on April 1, 2016. Compl. ¶¶ 26-27. Plaintiffs allege that they did not receive a receipt notice for their petitions because their petitions were not among those randomly selected for processing. *Id.* ¶ 29. Plaintiffs bring claims under the Administrative Procedures Act ("APA"), alleging that Defendants' are failing to process H-1B visa petitions in the order in which they are received and

that the random selection process is arbitrary and capricious and contrary to the statutory

requirement that petitions be processed in the order received.

## DISCUSSION

### A.  Standing

Defendants argue that neither the Individual Plaintiffs nor the Employer Plaintiffs have

standing to challenge the H-1B visa selection process. Defendants argue that as the beneficiaries

and not the petitioners, the Individual Plaintiffs do not have standing. Defendants also argue that

the Employer Plaintiffs, although petitioners, do not have standing because they do not

sufficiently allege injury or redressability.

#### 1.  Legal Standards

To have standing, a plaintiff must have "personal interest . . . at the commencement of the

litigation." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189

(2000). The personal interest must satisfy three elements throughout litigation: (1) an injury in

fact, *i.e.*, an invasion of a legally protected interest that is concrete and particularized, as well as

actual or imminent; (2) a causal connection between the injury-in-fact and the defendant's

challenged behavior; and (3) likelihood that the injury-in-fact will be redressed by a favorable

ruling. *Id.* at 180-81, 189; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

When a plaintiff seeks prospective injunctive relief, threat of repeated future injury may

suffice to provide standing. *See Nordstrom v. Ryan*, 762 F.3d 903, 911 (9th Cir. 2014). As

explained by the Ninth Circuit:

> A plaintiff seeking prospective injunctive relief "must demonstrate
> 'that he is realistically threatened by a *repetition* of [the
> violation].'" *Armstrong v. Davis,* 275 F.3d 849, 860–61 (9th
> Cir. 2001) (alteration in original) (quoting *City of L.A. v. Lyons,*
> 461 U.S. 95, 109 (1983)), *abrogated on other grounds by Johnson
> v. California*, 543 U.S. 499, 504–05 (2005). A threat of repetition
> can be shown "at least two ways." *Id.* at 861. "First, a plaintiff may

> show that the defendant had, at the time of the injury, a written
> policy, and that the injury 'stems from' that policy." *Id.* "Second,
> the plaintiff may demonstrate that the harm is part of a 'pattern of
> officially sanctioned . . . behavior, violative of the plaintiffs'
> [federal] rights.' " *Id.* (alterations in original) (quoting *LaDuke v.*
> *Nelson,* 762 F.2d 1318, 1324 (9th Cir. 1985)).

*Id* (emphasis and alterations in original). The threat of repeated future injury, however, may not

be "conjectural or hypothetical." *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) (quotation marks

omitted).

In addition to Article III standing, in statutorily created causes of action, including those

brought under the APA, the plaintiff must also demonstrate that he or she is within the "zone of

interests" protected by the law invoked in order to have standing to sue for a violation of the

statute (so-called "zone-of-interest" standing). *See Lexmark Int'l, Inc. v. Static Control*

*Components, Inc.*, 134 S. Ct. 1377, 1388-89 (2014). The zone-of-interest test for actions under

the APA is "not especially demanding," giving "the benefit of any doubt" to the plaintiff and

foreclosing suit "only when a plaintiff's interests are so marginally related to or inconsistent with

the purposes implicit in the statute that it cannot reasonably be assumed that Congress authorized

the plaintiff to sue." *Id.* at 1389 (quotation marks and citation omitted).

## 2. Standing of the Individual Plaintiffs

### a. Article III Standing

Defendants argue that because the Individual Plaintiffs are only the beneficiaries, and not

the petitioners, of the H-1B visa petitions, they do not have Article III standing. At oral

argument, Defendants stated that they maintain their position that the Individual Plaintiffs do not

have Article III standing, but focused their argument on zone-of-interest standing.

Case law is divided on whether only employer-petitioners, and not employee-

beneficiaries, have Article III standing to challenge immigrant and nonimmigrant visa petitions.

The Ninth Circuit has found Article III standing for immigrant visa petition beneficiaries, but has not yet ruled on whether beneficiaries for nonimmigrant visa petitions have Article III standing. The Court finds more applicable and persuasive the reasoning of cases showing that visa petition beneficiaries have standing.

The Court starts with the Ninth Circuit's opinion in *Abboud v. I.N.S.*, 140 F.3d 843 (1998). Mr. Abboud's father, a United States citizen, filed on Mr. Abboud's behalf a Form I-130 Petition to Classify Status of Alien Relative for Issuance of Immigrant Visa ("Relative Petition"). *Id.* at 845. Mr. Abboud brought suit challenging the denial of that petition. The government argued that Mr. Abboud did not have standing to challenge the petition because he only was the beneficiary, and not the petitioner. *Id.* at 847. The Ninth Circuit rejected this argument, noting that

> When a Relative Petition is filed, "[t]he immigrant beneficiary is more than just a mere onlooker; it is her own status that is at stake when the agency takes action on a preference classification petition." As the Relative Petition's beneficiary, Abboud lost a significant opportunity to receive an immigrant visa when the INS denied the Relative Petition. This lost opportunity represents a concrete injury to Abboud that is traceable to the INS's conduct and remediable by a favorable decision in this case. Accordingly, we hold that Abboud has standing in this matter.

*Id.* (citation omitted) (alteration in original).

Defendants, however, attempt to distinguish *Abboud* because it involved an immigrant visa, whereas H-1B visas are nonimmigrant visas. Defendants urge the Court to follow *Cost Saver Mgmt, LLC v. Napolitano*, 2011 WL 13119439 (C.D. Cal. June 7, 2011). The Court in *Cost Saver* found that a nonimmigrant visa petition beneficiary did not have standing because he could not show that he suffered harm to his own legal interests, as opposed to the legal interests of his petitioning employer. The court in *Cost Saver* distinguished *Abboud*, finding that because *Abboud* involved someone seeking an *immigrant* visa, which the court noted may eventually

(through additional petitions) allow a person to become a permanent legal resident of the United States and the plaintiff in *Cost Saver* was seeking a *nonimmigrant* visa for a temporary employee, the interests were different. 2011 WL 13119439, at *4. The Court does not find the difference between immigrant and nonimmigrant visas to be a persuasive distinction on the question of Article III standing that would justify departing from *Abboud's* holding that a visa petition beneficiary has standing.

As an initial matter, the Court notes that a recipient of an H-1B visa can, through subsequent petitions (such as through a Permanent Labor Certification, I-140 employer immigrant visa petition, and I-485 employee adjustment of status petition), become a permanent legal resident of the United States. *See, e.g.*, *Musunuru v. Lynch*, --- F.3d ---, 2016 WL 4123856, at *2 (7th Cir. Aug. 3, 2016) (noting that "[t]he Immigration and Nationality Act ("INA") provides a three-step process by which an alien who is already lawfully present in the United States through a nonimmigrant worker visa or status (commonly called H1-B) may become a permanent resident" and describing the process) (citing 8 U.S.C. §§ 1151(a)(2), 1152(a), 1153(b)(3)(C), 1154(a)(1)(F),1182(a)(5)(A)(i), 1255(a) and 8 C.F.R. §§ 204.5(a), 204.5(n)(1)); *see also* USCIS, *Adjustment of Status*, *available at* https://www.uscis.gov/green-card/green-card-processes-and-procedures/adjustment-status, last visited September 19, 2016 (explaining that nonimmigrant (temporary) workers can request an adjustment in status to immigrant (permanent) residents). Thus, the *Cost Saver* court's attempt to distinguish *Abboud* is a distinction without a difference in this case.

Moreover, the Court declines to parse the interests involved in immigrant and nonimmigrant visas as finely as Defendants' propose. Even if the Individual Plaintiffs could not parlay their nonimmigrant work visa into permanent residency, they are still "more than just a

mere onlooker" because it is their "status that is at stake" when USCIS takes action on an H-1B

petition. *Abboud*, 140 F.3d at 847. Additionally, the Individual Plaintiffs lose the "significant

opportunity" to obtain authorization to live and work in the United States, earning United States

wages, and enjoying life in the United States. *Cf. Patel v. United States Citizenship &*

*Immigration Servs.*, 2016 WL 795925, at *10 (E.D. Mich. Mar. 1, 2016) (finding in the context

of a challenge to denial of an I-765 petition[4] for a temporary work permit that the plaintiff had

suffered an injury for purposes of Article III standing because the plaintiff lost the opportunity to

obtain work authorization).

    The other cases cited by Defendants similarly do not provide a persuasive reason for

finding that visa petition beneficiaries lack Article III standing. The unpublished and nonbinding

decision in *Xiaodong Wang v. Holder* involves a case where a husband had petitioned for a

change of immigration status for his wife, Ms. Wang, but then later admitted to marriage fraud

and withdrew his petition. 500 F. App'x 650, 651 (9th Cir. 2012). The portion of the opinion

cited by Defendants is a footnote that states:

> To the extent Wang contests the agency's determination that the
> petition was in fact withdrawn, the [Bureau of Immigration
> Appeals] correctly noted that, as a beneficiary of the petition, she
> lacks standing to contest this decision. *Matter of Sano*, 19 I. & N.
> Dec. 299, 300 (BIA 1985) (only visa petitioner can appeal denial
> of visa petition). The record contains no suggestion that petitioner
> Cheung disagreed with or contested the agency's determination
> that he had withdrawn the petition.

*Id.* at 651 n.1.

    It is unclear from this footnote whether the court in *Wang* was merely confirming the fact

that the relevant administrative regulations do not convey standing on a visa petition beneficiary

---

[4] "Form I-765 is used by foreign nationals in the United States with certain nonimmigrant
visas or pending immigration applications that allow for temporary employment during their
adjudication period." *Patel*, 2016 WL 795925, at *4 n.8.

to file an *administrative agency* appeal, which is the holding of the cited case of *Matter of Sano*,[5] or whether the court meant to convey that Ms. Wang lacked *Article III* standing. To the extent it was the former, it does not support Defendants' argument.

To the extent it was the latter, the court in *Wang* did not engage in any analysis of the elements of Article III standing and relied solely on a case involving standing to bring an administrative appeal. The Court finds this *dicta* in an unpublished opinion not persuasive. *See Mantena v. Johnson*, 809 F.3d 721, 732 (2d Cir. 2015) ("In any event, the fact that Mantena may not have satisfied USCIS's definition of 'legal standing' before the agency does not mean she does not have standing to bring this lawsuit in *federal court*." (emphasis in original)); *Kurapati v. U.S. Bureau of Citizenship & Immigration Servs.*, 775 F.3d 1255, 1260 (11th Cir. 2014) (reversing the district court's finding that the plaintiff did not have constitutional standing, noting that the regulatory definition "does not preclude the beneficiary from having standing in the district court," and finding that the plaintiff had standing); *Olamide Olorunniyo Ore v. Clinton*, 675 F. Supp. 2d 217, 223 (D. Mass. 2009) ("Whether a litigant has standing to sue in federal court, however, is not dependent on any agency regulation.").

The remaining three cases cited by Defendants all rely on another district court case, *Blacher v. Ridge*, 436 F. Supp. 2d 602 (S.D.N.Y. 2006), for the proposition that a visa petition beneficiary does not have Article III standing. *See George v. Napolitano*, 693 F. Supp. 2d 125, 130 (D.D.C. 2010); *Li v. Renaud*, 709 F. Supp. 2d 230, 236 n.3 (S.D.N.Y. 2010); *Ibraimi v. Chertoff*, 2008 WL 3821678, at *3 (D.N.J. 2008). *Blacher*, however, involved a claim that the

---

[5] In *Sano*, the Board of Immigration Appeals noted that its "appellate jurisdiction is defined by the regulations" and that without an "affirmative[] grant" of power under the regulations, the Board has no jurisdiction. *Sano*, 19 I. & N. at 300-301. The Board further noted that the regulations provide solely for an appeal to the Board by the petitioner and not the beneficiary, and thus the Board only has jurisdiction to hear appeals by the petition. *Id.* at 301. The Board did not discuss the issue of Article III standing in federal court.

visa petition beneficiary's constitutional due process rights had been violated. 436 F. Supp. 2d. at 606. In a footnote, the court in *Blacher* noted that admission to the United States is a privilege granted by the United States government and thus an alien does not have a constitutionally protected right to enter the country. *Id.* at 606 n.3. The court in *Blacher* also cited to the agency regulations establishing that only the visa petitioner (the employer) could seek review of a petition's denial to conclude that the only violation of due process the court was going to consider would be those alleged by the employer. *Id.* The court in *Blacher* did not discuss the fact that the cited administrative regulations apply only to administrative appeals and also did not discuss any of the elements of Article III standing. The Court does not find persuasive the limited analysis in *Blacher* relating to standing. *See Shalom Pentecostal Church v. Napolitano*, 2013 WL 162986, at *3-4 (D.N.J. Jan. 15, 2013) ("*Shalom I*") (holding that visa petition beneficiaries do have standing and disregarding *Blacher* and the other cases cited by Defendants for improperly relying on "the *regulatory* requirement that only the petitioner, and not the petition's beneficiary" may file an administrative appeal (emphasis in original)).

### b. Zone-of-Interest Standing

In their reply brief, Defendants raised the argument that nonimmigrant workers such as the Individual Plaintiffs are not within the zone of interests protected by the relevant section of the INA because the statute is designed to protect American workers and employers, not foreign workers.[6] Defendants further argued at oral argument that because Plaintiffs are seeking *nonimmigrant* employment status, their situation is different from the plaintiffs in several Circuit Court opinions noted by the Court that have held that putative *immigrant* workers have zone-of-

---

[6] The Court notes that although generally new arguments may not be raised in a reply brief, because Plaintiffs asserted in their response brief that the Individual Plaintiffs had zone-of-interest standing, the Court considers this argument on the merits.

interest standing in the adjudication of the petitions filed by their putative employers. *See, e.g.*, *Mantena*, 809 F.3d at 733; *Shalom Pentecostal Church v. Acting Sec'y U.S. Dep't of Homeland Sec.*, 783 F.3d 156, 164 (3d Cir. 2015) ("*Shalom II*"); *Kurapati*, 775 F.3d at 1261; *Patel v. U.S. Citizenship & Immigration Servs.*, 732 F.3d 633, 636-37 (6th Cir. 2013). Defendants again argue that the distinction between immigrant and nonimmigrant workers, as discussed in *Cost Saver*, warrants a finding that nonimmigrant workers are not within the zone of interests. The Court disagrees.

As previously discussed, a nonimmigrant work visa may be a step on the path to permanent residency or even possibly citizenship, albeit further back on the path than an immigrant work visa. Notably, however, it is not just the immigrant worker's position on the path to permanent residency, citizenship, or longer-term status that is the focal point of the cases finding zone-of-interest standing for immigrant workers. Those cases primarily turn on the fact that it is the employee who is the recipient of the visa, it is the employee who gets to work in the United States, it is the employee who can port their visa to a new employer, and the INA's purpose is not solely to protect American workers and employers. *See, e.g.*, *Kurapati*, 775 F.3d at 1261 (noting that the ability to port the visa implies that the beneficiary is within the zone of interests because the employer receives no benefit to the ability of an employee to leave and work somewhere else, concluding "[e]ven assuming that Congress intended to benefit American employers and protect jobs for American citizens in creating the framework for employment visas, that does not rule out that Congress acted with the intent to regulate or protect immigrants' interests"); *Patel*, 732 F.3d at 636-37 ("Simply stated, under § 1153(b)(3) it is the alien, not the employer, who is entitled to an employment visa; and that makes unavoidable the conclusion that the alien's interests are among those 'protected or regulated by the statute[.]' . . . [T]he alien,

ultimately, is the one who is entitled to the employment visa. The alien's interest in receiving it is therefore within the zone of interests protected or regulated by the statute." (alteration in original) (quoting *Match-E-BE-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 132 S. Ct. 2199, 2210 (2012)); *cf. Shalom II*, 783 F.3d at 164 (finding under the text of the INA that "the interests of employment-based visa petition applicants" are "directly related to the purposes of the INA," without any limitation to only employment based immigrant visa petitions, and finding persuasive the fact that it is the employee who receives the visa, can apply for permanent residency, and need only show their qualifications).

Similar considerations apply here. It is the Individual Plaintiffs who will receive the nonimmigrant visa, have the right to live and work in the United States if the visa is approved, and must follow extensive regulations on his or her conduct in order to work in the United States, apply for an extension of the H-1B visa, or apply for an adjustment of status to permanent resident. The Individual Plaintiffs also may accept new employment upon a filing by the prospective new employer. 8 U.S.C. § 1184(n)(1).[7] Additionally, unlike some other temporary work visas with shorter durations, H-1B visas can be valid for up to six years and additional extensions may be requested under certain circumstances, such as when a petition for an adjustment of status is pending. *See* 8 U.S.C. § 1184(g)(4); 8 C.F.R. §§ 214.2(h)(9)(iii), (h)(13)(iii)(A).

Moreover, as Plaintiffs' point out, the statute under which the Individual Plaintiffs' bring their challenge is 8 U.S.C. § 1184(g)(3), which provides that H-1B petitions shall be reviewed in the order received. Reviewing petitions in the order received does not protect American workers,

---

[7] The Supreme Court instructs that in considering the "zone of interests," a court should look not only at the specific provision under which the challenge is brought, but also other provisions having an "integral relationship" to that provision. *See Air Courier Conference of Am. v. Am. Postal Workers Union*, 498 U.S. 517, 530 (1991).

it protects the visa petitioner and beneficiary. Although the application of the statutory cap is reiterated in this provision, that does not support the conclusion that in this provision Congress is indifferent to the alien's interest in having the petition reviewed in order.

Defendants rely on *Khalid v. DHS, USA*, 1 F. Supp. 3d 560 (S.D. Tex. 2014), to argue that Plaintiffs do not have zone-of-interest standing. *Khalid* involved a challenge to a denial of a petition for an adjustment of status from a religious worker. The court in *Khalid* relied on its finding that the INA was intended to protect American laborers and not foreign workers, the significant limitations placed on religious workers, and the extremely small cap of 5,000 permitted workers, to conclude that a visa petition beneficiary was not in the zone of interests of the statute relating to foreign religious workers. *Id.* at 569. Notably, the court in *Khalid* did not discuss or distinguish the Sixth Circuit's opinion in *Patel*, which found that a visa petition beneficiary does have zone-of-interest standing. The Court in *Patel* expressly rejected the conclusion reached by the *Khalid* court that the purpose of the INA is to benefit American employers and laborers. *See Patel*, 732 F.3d at 636 ("But it is folly to talk about 'the purpose' of the statute when the statute reflects a compromise between multiple purposes. One can speculate that Congress meant to exclude certain aliens to protect American workers, and admit other, 'qualified' aliens to help American employers. But there is no basis in the text of the statute— none—to conclude that Congress was completely indifferent to the interests of the 'qualified immigrants' themselves.").

Further, *Khalid* was decided before the Third Circuit's decision in *Shalom II*, the Eleventh Circuit's decision in *Kurapati*, and the Second Circuit's decision in *Mantena*. These cases all found that employment-based visa petition beneficiaries had zone-of-interest standing. The Third Circuit also rejected the contention that because the INA is intended to protect

American workers, the alien worker's interests are also not within the zone of interests. *Shalom II*, 783 F.3d at 164. The Third Circuit found that "[t]he text of the INA leaves no doubt that the interests of employment-based visa petition applicants, and special immigrant religious workers in particular, are directly related to the purposes of the INA." *Id.*

The Court does not find persuasive *Khalid's* conclusion that the INA is meant to protect only American workers and employers, without any consideration of the interests of qualified nonimmigrants. The Court also notes that the visa program at issue in *Khalid* had a much lower statutory cap (5,000) than does the H-1B visas, and thus the court's reliance in *Khalid* on the extremely low statutory cap as supporting a finding that the interests of the foreign worker are not within the zone of interests is inapplicable to this case.

Defendants also rely on *Hispanic Affairs Project v. Perez*, 2016 WL 4734350 (D.D.C. Sept. 9, 2016). The court in *Hispanic Affairs* found that foreign workers seeking H-2A visas did not have zone-of-interest standing, finding itself bound to so decide by a recent D.C. Circuit decision, *Mendoza v. Perez*, 754 F.3d 1002, 1017 (D.C. Cir. 2014). *Id.* at *13. In *Mendoza*, the D.C. Circuit concluded that American workers had zone-of-interest standing to challenge H-2A visa decisions because "[t]he clear intent of [the INA's H-2A] provision is to protect American workers from the deleterious effects the employment of foreign labor might have on domestic wages and working conditions." *Mendoza*, 754 F.3d at 1017. The D.C. Circuit did not, however, find that the INA's H-2A provisions were *only* concerned with American workers. Whether nonimmigrant visa petition beneficiaries are also within the zone of interest was not at issue in *Mendoza*. The Court agrees with the Third and Eleventh Circuits' findings that the INA's interest in protecting American workers does not mean there is no interest in protecting the foreign worker. *See Kurapati*, 775 F.3d at 1261; *Patel*, 732 F.3d at 636.

Moreover, H-2A visas are distinguishable from H-1B visas. H-2A visas are generally for seasonal work, may be extended in one-year increments, and are only for a maximum of three years before the visa holder must leave the United States for a minimum of three months. *See H-2A Temporary Agricultural Workers*, *available at* https://www.uscis.gov/working-united-states/temporary-workers/h-2a-temporary-agricultural-workers#Period%20of%20Stay (last visited September 19, 2016). Additionally, H-2A visas are not dependent on the *qualifications* of the employee, but merely on the need of the employer, and can be sought for an unnamed beneficiary. H-1B visas, on the other hand, must be petitioned for a specific employee, that employee must have sufficient qualifications, and the visa is for a longer duration.

The Court notes that the zone-of-interest test "is not meant to be especially demanding" because Congress intended to "make agency action presumptively reviewable" when enacting the APA, and the "benefit of any doubt" must be given to the plaintiff. *See Lexmark*, 134 S. Ct. at 1389; *Match-E-BE-Nash-She-Wish*, 132 S. Ct. at 2210. Thus, even if there is doubt that the INA protects the interests of nonimmigrant beneficiaries, the Court gives the benefit of the doubt to the Individual Plaintiffs. Accordingly, the Court finds that the interests of the Individual Plaintiffs as *nonimmigrant* beneficiaries of an employer-sponsored visa petition are within the zone of interests protected by the relevant provisions of the INA. The Court cannot say that the Individual Plaintiffs' connection to the processing and possible granting of the H-1B visa petitions filed on their behalf is "so marginally related to or inconsistent with the purposes implicit" in the INA that it "cannot reasonably be assumed that Congress authorized" the Individual Plaintiffs to sue. *Lexmark*, 134 S. Ct. at 1388.

### 3. Standing of the Employer Plaintiffs

#### a. Injury

Defendants argue that Plaintiffs fail adequately to plead an injury. Defendants contend that Plaintiffs must plead that the Employer Plaintiffs still want to hire the Individual Plaintiffs and that the Individual Plaintiffs still want to work for those employers, relying on *Ching Yee Wong v. Napolitano*, 654 F. Supp. 2d 1184 (D. Or. 2009). The Court finds *Wong* to be distinguishable.

Ms. Wong had an H-1B visa to work as a graphic designer. *Id.* at 1187. Her then-current employer filed an H-1B extension petition on her behalf. That extension petition was denied on March 23, 2003. At some point Ms. Wong left work at this employer and began working for a new employer, who petitioned for H-1B extensions that were granted. Ms. Wong then filed an I-485 petition to adjust her status from a temporary worker to a permanent resident. *Id.* at 1188. This petition was denied because USCIS determined that the time Ms. Wong spent at her first employer after the H-1B extension petition was denied on March 23, 2003, constituted unauthorized employment. *Id.* Ms. Wong and her former employer then both filed suit, arguing that the March 2003 denial of the extension petition was erroneous. *Id.* The defendants filed a motion to dismiss the former employer's claim for lack of standing.

U.S. Magistrate Judge Stewart held that Ms. Wong's former employer did not have standing because it failed to allege an injury. Judge Stewart noted that the former employer had not employed Ms. Wong for years, did not allege that it wanted to re-employ her in the future, and did not allege that USCIS's allegedly improper determination regarding Ms. Wong's H-1B extension petition affected the former employer's ability to find and hire workers. *Id.* at 1188-89. Judge Stewart expressly distinguished cases where a putative employer was unable to hire an alien in an available position because USCIS denied an H-1B petition. *Id.* at 1189-90 ("Because

the denial of the visa application would deprive the employer of the prospective employee, each employer had a concrete and particularized injury, namely the inability to hire a specific employee it would have hired absent the agency's action. . . . Additionally, as in the other cited cases, the plaintiff . . . was actively seeking to employ an alien and was thwarted by the action of a federal agency, which again presents a text-book instance of an actual, concrete injury."). The facts here align with the circumstances that Judge Stewart noted would demonstrate a concrete and particularized injury—namely that the Employer Plaintiffs wanted to hire the Individual Plaintiffs and were unable to do so because of USCIS's action.

Moreover, in response to Defendants' motion, Plaintiffs filed declarations from the Individual Plaintiffs attesting that they would still like to work for the Employer Plaintiffs and declarations from representatives of the Employer Plaintiffs, attesting that they still want to hire the Individual Plaintiffs. ECF 22-25. The Court deems the Complaint amended to make such allegations.

Defendants also generally argue that Plaintiffs have not sufficiently alleged an injury by alleging only that their H-1B petitions were not processed in the order received. The Court disagrees. Plaintiffs allege that: (1) the statute governing the review of H-1B visas requires that USCIS review those petitions in the order received; (2) USCIS does not review the petitions in the order received but instead reviews them based on a random computer-generated selection; (3) as a result of USCIS's random selection process, Plaintiffs' applications were rejected and were not given any sort of "priority" date, such as is used in the processing of other types of visa petitions; (4) the lack of a priority date means that as future H-1B visas become available Plaintiffs' petitions will not be considered in the order received; and (5) the random selection process does not ensure that persons whose H-1B visa petitions were selected were not petitions

received after Plaintiffs submitted their petitions. The Court finds these allegations are sufficient to show a concrete and particularized injury.

### b. Redressability and Mootness

Defendants' final standing argument is that Plaintiffs fail to allege an injury that is redressable by this Court. Defendants argue that because the fiscal year 2017 H-1B petitions, which are those that were filed in April 2016, have already been reviewed and the statutory quotas are exhausted, Plaintiffs' claims are not redressable. Defendants further argue that Plaintiffs cannot sufficiently plead that they will suffer future harm because it is mere speculation and subjective apprehension that Plaintiffs' petitions will not be randomly selected if they were to submit petitions next year. In their reply brief, Defendants also raise the issue of mootness. The Court does not find Defendants' arguments persuasive.

First, the wrong alleged by Plaintiffs is not that their petitions were not selected by the lottery and granted, but that the process itself is illegal because it does not consider applications in the order received. Plaintiffs assert harm from this year in that their petitions were not reviewed in the order received and were not given a priority date so that as future H-1B visas become available, Plaintiffs' petitions will be "in line" in the order received. Plaintiffs argue that they will be subjected to that same harm next year when the Employer Plaintiffs file H-1B petitions on behalf of the Individual Plaintiffs. That is not a harm that is extinguished because this year's statutory caps have been reached. Plaintiffs are not asking the Court to order USCIS to review or grant their petitions for fiscal year 2017. If the Court orders that H-1B petitions must be reviewed in order without using the random computer selection process, that would redress Plaintiffs' alleged harm.[8] Thus, Plaintiffs' alleged harm is redressable.

---

[8] The Court makes no determination regarding the merits of Plaintiffs' claims. Redressability considers whether a court order can redress the plaintiffs' claims for purposes of

Second, the Court does not agree that Plaintiffs' fail to allege a realistic threat of future harm. Plaintiffs' allegations show that the decision to use the random computer selection system and to include all of the H-1B visa petitions received in the first five days in that selection is based on a "written policy," 8 C.F.R. § 214.2(h)(8)(ii)(B), and the alleged harm to Plaintiffs that they did not have their H-1B visa petitions reviewed in the order received stems from that policy. This is sufficient to show a realistic threat of repeated harm. *Nordstrom*, 762 F.3d at 911.

Third, Plaintiffs' alleged future harm is not merely conjectural or hypothetical. Regardless of whether Plaintiffs' petitions next year will ultimately be selected for review, they will most likely be subjected to the random computer selection process. Plaintiffs allege that for the last four years, significantly more petitions have been received than the statutory cap. Defendants note in their opening brief that in "every year since the general H-1B cap was set at 65,000 in FY 2004 USCIS receive[s] more H-1B petitions than can be approved per the statutory cap." ECF 14 at 5. Defendants emphasize that this year in the first five days in which petitions could be filed, UCSIS received approximately 236,000 petitions, "almost triple the number of H-1B visas allowed by statute." *Id.* Defendants characterize the number of H-1B visas petitions received as an "extraordinarily large number" and argue that the volume of applications justifies the procedures USCIS put in place. *Id.* After emphasizing how the statutory cap is always well exceeded by the number of petitions received in the first few days, Defendants then argue for purposes of redressability that it is "speculative that a cap will be needed for next year's lottery." ECF 16 at 8. The Court rejects this argument.[9]

---

standing and not whether the plaintiffs have stated a claim or will prevail on those claims on the merits. *Cf. Abboud*, 140 F.3d at 847-48 (finding that the plaintiff had standing to assert his claims, but then dismissing the plaintiff's claims for failure to state claim).

[9] Defendants also cite to this Court's opinion in *Updike v. City of Gresham*, 62 F. Supp. 3d 1205, 1214 (D. Or. 2014). That case, however, involved an alleged threat of future arrest and

Given the history of the volume of H-1B petitions, it is not unreasonably speculative to infer that the statutory cap will be met next year. And if the statutory cap is met next year, under 8 C.F.R. § 214.2(h)(8)(ii)(B) the random computer selection process will be used. Thus, Plaintiffs' allegations of procedural injury sufficiently plead redressability. *Cf. Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*, 807 F.3d 1031, 1044 (9th Cir. 2015) ("Plaintiffs alleging procedural injury can often establish redressibility with little difficulty, because they need to show only that the relief requested—that the agency follow the correct procedures—may influence the agency's ultimate decision of whether to take or refrain from taking a certain action. This is not a high bar to meet." (quotation marks and citation omitted)).

Finally, in their reply brief Defendants raise an additional mootness argument, based on the fact that the statutory cap for 2016 has already been met. At oral argument, however, Defendants conceded that if Plaintiffs allege that the Employer Plaintiffs seek to hire the Individual Plaintiffs next year and intend to file an H-1B petition in April 2017, and the Individual Plaintiffs intend to accept such employment, then the case is not moot and the Employer Plaintiffs have standing. The Court noted that it considers these facts to be a reasonable inference from the facts alleged in Plaintiffs' Complaint. Nonetheless, the Court allows Plaintiffs' leave to replead to make these allegations explicit.

## B. Statute of Limitations

In their motion, Defendants argued that Plaintiffs' claims are time barred under the six-year statute of limitations applicable to APA claims, asserting that the claims run from the date that the 2008 revisions to 8 C.F.R. § 214.2(h)(8)(ii)(B) were promulgated. Before oral argument,

---

prosecution, and the Court was discussing the high bar to seeking prospective injunctive relief in cases involving arrests, particularly because plaintiffs can avoid the injury by conducting their activities within the law. *Updike* also did not involve a written policy from which the plaintiff's alleged harm stemmed.

the Court asked the parties to be prepared to discuss the recent Ninth Circuit decision in *Perez-Guzman v. Lynch*, --- F.3d ---, 2016 WL 4536572 (9th Cir. Aug. 31, 2016), relating to when the statute of limitations accrues for a challenge from the application of an allegedly improper agency rule.[10] In light of this case, at oral argument Defendants conceded their statute of limitations motion, recognizing that Plaintiffs are alleging a substantive challenge to 8 C.F.R. § 214.2(h)(8)(ii)(B) and thus the statute of limitations commences upon the challenged application of this regulation to Plaintiffs.

## CONCLUSION

Defendants' motion to dismiss (ECF 14) is DENIED.

**IT IS SO ORDERED**.

DATED this 22nd day of September, 2016.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge

---

[10] *Perez-Guzman* held: "Procedural challenges to agency rules under the Administrative Procedure Act are subject to the general six-year limitations period in the U.S. Code. *See Wind River Mining Corp. v. United States*, 946 F.2d 710, 713–14 (9th Cir. 1991) (citing 28 U.S.C. § 2401(a)). Under *Wind River*, challenges to a 'mere procedural violation in the adoption of a regulation or other agency action' must be brought within six years of the agency rulemaking, whereas challenges to 'the substance of an agency's decision as exceeding constitutional or statutory authority' may be brought any time 'within six years of the agency's application of the disputed decision to the challenger.' *Id.* at 715–16.

Whether Perez's challenges are timely therefore depends on whether they are procedural or substantive. Perez's central claim is that the Attorney General's refusal to consider his asylum application is based on an unreasonable interpretation of § 1158 and § 1231(a)(5). The parties agree this is a substantive challenge. Because it was brought within six years of the BIA's refusal to consider Perez's asylum application, it is timely. *See Cal. Sea Urchin Comm'n v. Bean*, --- F.3d ---, 2016 WL 3739700, at *4 (9th Cir. July 12, 2016) (holding timely a challenge to 'the present application of an earlier rule that allegedly contradicted the agency's statutory authority')." 2016 WL 4536572, at *7.