1              IN THE UNITED STATES DISTRICT COURT

2                  FOR THE DISTRICT OF OREGON

3    TENREC, INC., et al.,        )
                                  )
4              Plaintiffs,        )   3:16-cv-00995-SI
                                  )
5        vs.                      )   September 14, 2016
                                  )
6    U.S. CITIZENSHIP AND         )   Portland, Oregon
     IMMIGRATION SERVICES, et al., )
7                                  )
               Defendants.        )

8

9

10                   (Telephone Conference)

11              TRANSCRIPT OF PROCEEDINGS

12       BEFORE THE HONORABLE MICHAEL H. SIMON

13          UNITED STATES DISTRICT COURT JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                          APPEARANCES

 2   FOR THE PLAINTIFFS:   Brent W. Renison
                           Parrilli Renison
 3                         610 SW Broadway, Suite 505
                           Portland, Oregon  97205
 4
     FOR THE DEFENDANTS:   Joshua S. Press
 5                         U.S. Department of Justice
                           P.O. Box 868
 6                         Washington, D.C.  20044

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24   COURT REPORTER:       Dennis W. Apodaca, RDR, RMR, FCRR, CRR
                           1000 SW Third Avenue, Room 301
25                         Portland, OR  97204
                           (503) 326-8182
```

1                    (September 14, 2016)

2                P R O C E E D I N G S

3          (In chambers; telephone conference:)

4          MR. PRESS:  Your Honor, this is the time set for a

5    telephone Rule 16 conference and oral argument on a motion to

6    dismiss defendants' motion to dismiss, 14, in civil case

7    16-cv-995-SI, Tenrec, Inc., et al., versus U.S. Citizenship and

8    Immigration Services.  Counsel, there is a court reporter

9    present, so please be sure to state your name before you speak.

10          Here is Judge Simon.

11          THE COURT:  Good afternoon, everyone.  I have read

12    the motion to dismiss the response and the reply.  I've also

13    read the four declarations that plaintiffs filed September 8th.

14    I am eager to hear your arguments.  But before we dive into the

15    arguments, will someone clearly explain to me the difference in

16    how these visa petitions were handled before and after the 2008

17    change.  Maybe the right way to do that is ask Mr. Renison to

18    tell me his understanding and then to see whether Mr. Press

19    wants to add anything to that explanation.

20          Mr. Renison.

21          MR. RENISON:  Yes, Your Honor.  Thank you.

22          So before and after the regulation -- before the

23    regulation, there was a series of regulations, which I

24    reproduced as exhibits to the motion for summary judgment,

25    which basically began about in 1992 is the first regulation.

1    At that time the agency decided in its regulation to reject

2    petitions that were filed during the fiscal year, which perhaps

3    at the end of the year they hadn't received during that fiscal

4    year and approved enough cases that they just said, "Well, just

5    resubmit these in the next fiscal year," instead of assigning a

6    priority date to them.

7            At no time until, I think the first year was 2006 or

8    2007, at no time before that, let's say the 2007 date was there

9    a point at which visas -- there were more visa petitions filed

10    in a given several-day period than were available in the entire

11    year.  So during the 2001 time period they increased the

12    numbers temporarily to 195,000, which alleviated the issue of

13    not having enough numbers for the number of petitioners.  But

14    then that was a sunsetting provision that went away.

15            So there were two lotteries conducted in 2007 and

16    '08, and, Mr. Press, correct me, but I believe it was

17    2007-2008 -- it was the 2006-2007 fiscal year, but then there

18    were numbers available because less people started filing when

19    the recession hit.  So some of those people who missed out on

20    the lottery, they just refiled, and they got a number.  It was

21    only in 2013 that the number of petitions then again was

22    greater in a five-day filing window than the number of

23    petitions available for the entire fiscal year, and it has been

24    that way ever since -- 2013, 2014, 2015, 2016 -- and that is

25    where it is now, and I don't know if that's a sufficient enough

1    explanation of the history of the regulations.

2              THE COURT:  You know, it's my fault.  I didn't phrase

3    the question clearly.  I just really want to know the change.

4    What was the effect of the change of the 2008 regulation?  So

5    in other words, how were things processed immediately prior to

6    that regulation and how were things processed after?  So I

7    apologize for not being clear.

8              Mr. Press, can you help me.

9              MR. PRESS:  Yes, Your Honor, this is Mr. Press.  It

10   is our understanding that essentially prior to the regulations,

11   the applications would be accepted, and given that, as

12   Mr. Renison explained, there was not usually, at least, undue

13   pressure on the system that they would normally not exceed the

14   allotment, the congressional caps.  They would take them and

15   process them.

16              There was not necessarily a line, as Mr. Renison is

17   arguing for, but they would process them.  Once that became a

18   problem, i.e., once the cap started to get hit, taking those

19   applications in the order that they were received started to

20   become grossly unfair in the sense of -- for example, the

21   USCIS' mailroom has to actually process these, put them in an

22   order.  Now, I think Your Honor can imagine that when the

23   postal service delivers applications in envelopes, and they

24   literally drop the bag and certain envelopes fall on top and

25   other envelopes fall on the bottom, that is pretty unfair to

1    treat those on the bottom arbitrarily and say, "Well, they are

2    after the cap now, so I guess they are out of luck."  So that

3    is why essentially the randomized process with the lottery was

4    created, to not have that sort of unfair arbitrary disparity

5    between all of these applications coming in at once.

6           THE COURT:  And that was the lottery that was created

7    by the regulations in 2008?

8           MR. PRESS:  Yes, Your Honor.

9           THE COURT:  Okay.  Thank you very much.

10          All right.  I have read all of the briefs, but to the

11   extent that defendants would now like to further argue their

12   motion to dismiss, you're welcome to do so.

13          MR. PRESS:  Mr. Renison, since it is my motion, I

14   would like to begin.

15          THE COURT:  Yes.  I invited defendants to do so.  I

16   apologize for not being clear.  So, yes, defendants may argue

17   their motion.

18          MR. PRESS:  Thank you, Your Honor.

19          As Your Honor instructed with its order yesterday

20   regarding the statute of limitations argument, and specifically

21   the Ninth Circuit, Judge Fisher's recent decision in

22   Perez-Guzman v. Lynch, we would like to withdraw our arguments

23   regarding statute of limitations.  It is our understanding, and

24   plaintiffs' counsel can correct me if I'm wrong, but it is our

25   understanding based on the briefing and our reading of the

1    complaint that they are pursuing a substantive claim against

2    the alleged violations of their clients' rights under the

3    statute rather than a procedural claim as would be covered

4    under the Ninth Circuit case law as described in Perez-Guzman.

5              THE COURT:  That's my understanding too.

6              Mr. Renison, I take it you agree?

7              MR. RENISON:  I agree.

8              MR. PRESS:  Okay.

9              THE COURT:  All right.  Very good.  Let's move on to

10   the other arguments.

11             MR. PRESS:  Thank you, Your Honor.

12             Despite our all being in agreement on the statute of

13   limitations concern, we do have genuine concerns regarding the

14   factual sufficiency included within the complaint as currently

15   written.

16             THE COURT:  By the way, let me interrupt you there if

17   I may.  One of the things that I'm already planning on doing is

18   treating the four declarations as supplementing the complaint

19   because obviously if I were to allow leave to replead to add

20   the contents of those four declarations, we now know that

21   plaintiffs can in good faith and consistent with Rule 11 add

22   essentially the allegations in those four declarations to the

23   complaint.  So to get right to the substance of it, I'm going

24   to treat the four declarations plus the complaint combined as

25   essentially the allegations that plaintiff has pled.

1          MR. PRESS:  Understood, Your Honor.  That actually

2   does make sense to us.  We note, however, that there is still a

3   deficiency with that proposed solution, based on the language

4   in the declaration, this goes to the redressability argument

5   that we make in our motion to dismiss and that we discuss in

6   the reply as well, of course, with respect to whether the

7   individual plaintiffs have standing, specifically

8   zone-of-interest standing, to pursue their claims rather than

9   any organizational plaintiffs.

10          If Your Honor would allow to begin with the

11   zone-of-interest argument first and then I can proceed with the

12   justiciability argument, whichever you prefer.

13          THE COURT:  Whatever you prefer.  I understand both

14   of the issues, so whatever you prefer.

15          MR. PRESS:  Okay.  Thank you.

16          Let's start with the zone-of-interest standing.

17   Although we do believe there are good arguments regarding

18   deficiencies with the individual plaintiffs pursuing these

19   claims, constitutional deficiencies, in that it is not clear

20   that they're actually -- being non-immigrant workers do have

21   any sort of constitutional right or cognizable right to pursue

22   these claims rather than petition the company themselves, with

23   respect to the zone of interest, we think that's an even

24   stronger argument.

25          If you look at the statutory concerns with what went

1   into creating this system and specifically the caps, if you

2   look at other case law out there treating non-immigrant workers

3   such as the individual plaintiffs in this case, it is quite

4   clear -- and the case law is fairly uniform that non-immigrant

5   workers do not fall within the zone of interest.  Instead the

6   immigrant workers were people who were here as long-term

7   permanent residents.  Those are different cases and are

8   distinguished in this case because what the plaintiffs are

9   arguing for here -- the individual plaintiffs more

10  specifically.  If you look at declarations, they want to work

11  for these companies.  They want to work for money, but that in

12  itself creates a problem because when they work for money here

13  in the United States, they are taking jobs away from American

14  workers.

15          Specifically there is a lot of case law out there,

16  including very recent case law from the District of Columbia,

17  one from last week, where they look at, again, non-immigrant

18  worker visas and whether non-immigrant workers fell within the

19  zone of interest to be protected under certain provisions of

20  the INA.

21          What that Court held in Hispanic Affairs Project v.

22  Perez, which is in line with the Southern District of Texas

23  decision that we cited in our reply brief, was that many

24  conditions of the INA are designed to protect American workers

25  and that none of the foreign plaintiffs who are here -- coming

1    in here as non-immigrant workers are within the class of the

2    protection of the INA provisions and, therefore, they may not

3    seek relief under of the APA.

4           We think that there is nothing in the declarations

5    that gets around this problem and, therefore, I guess deciding

6    if whether they have prudential or non-prudential standing is

7    sort of outside what was intended by these regulatory and

8    statutory provisions.  The same cannot be said about the

9    petitioning companies.

10          THE COURT:  Before we get to the companies, I'm not

11   familiar with the Hispanics Affairs Project case.  What was the

12   date it was issued?

13          MR. PRESS:  It was issued last Friday, September 9,

14   2016.

15          THE COURT:  By the D.C. Circuit?

16          MR. PRESS:  By the District Court for the District of

17   Columbia.  I can provide you with the Westlaw citation if that

18   would be more helpful.

19          THE COURT:  That's fine.  What is the Westlaw

20   citation?

21          MR. PRESS:  It is 2016WL4734350.  That was in the

22   context of H-2A workers.  It cites the case law we cited to in

23   our reply brief, but it very much keeps in line with the

24   arguments that we make in our reply brief regarding

25   zone-of-interest analysis.

1          THE COURT:  Let's just stay for a while on the

2     individual plaintiffs for zone of interest.  I have read your

3     Southern District of Texas case, the Khalid case.  But what

4     about cases I have seen from other circuits, Mantena v. Johnson

5     from the Second Circuit; Shalom Pentecostal Church from the

6     Third Circuit; the Kurapati case.  I am drawing a blank which

7     circuit that was in.

8          MR. PRESS:  The Eleventh Circuit.

9          THE COURT:  The Eleventh Circuit.  The Patel case

10    from the Sixth Circuit.  They seem to show zone-of-interest

11    standing for individual beneficiaries.  Am I missing something?

12         MR. PRESS:  Yes, Your Honor.  Those, again, are cases

13    that are for immigrant workers or long-term permanent

14    residents.  When we discuss Abudu, on the constitutional

15    standing argument in our reply brief, that sort of goes front

16    and center that immigrant workers are in a different category.

17         The reason why this is important is that

18    non-immigrant workers, such as the individual plaintiffs in

19    this case, are here under H-1B visas and here for a finite

20    period of time.  LBRs -- immigrant workers -- they are not here

21    for a finite period of time.  Of course, they can leave if they

22    like.  If they violate certain laws, they are subject to

23    deportation after that.  But immigrant workers, long-term

24    permanent residents, that's a much farther step along the

25    process than the individual plaintiffs in this case.

1          Although the individual plaintiffs in this case might

2   wind up pursuing LBR status years from now, we're not there

3   yet.  The whole system of H-1B, as Congress decided, was to

4   create temporary visas for temporary non-immigrant workers.  So

5   really we are talking about apples and oranges when we are

6   comparing those two.

7          THE COURT:  I see.  All right.

8          Let me turn to plaintiff then and ask you to respond

9   just to the zone-of-interest argument with respect to

10  individual plaintiffs.  Then I will go back to defendants and

11  have him talk about the zone-of-interest argument with respect

12  to employer-plaintiffs.

13         Mr. Renison.

14         MR. RENISON:  Yes.  Thank you, Your Honor.

15         With respect to the zone of interest, I think it is

16  important to look at, first of all, the statute at issue here,

17  which is 8 U.S. Code 1183(g)(3).  The other relevant section is

18  (g)(1) -- you know what, I am sorry.  It is 1184.  I wrote it

19  wrong.  So that's 8 U.S. Code 1184(g)(3) and 1184(g)(1).

20  (g)(1) contains the numerical restrictions, but (g)(3) sets out

21  the filing date order consideration for an alien who files

22  first.  So they get visas or status first if they file before

23  later filers.

24         It is (g)(3) and not (g)(1) that protects individual

25  aliens against something other than an orderly distribution of

1   limited visas.  It is (g)(3), not (g)(1) that protects against
2   a lottery system.  And it protects the individual aliens.
3        One more thing that is relevant to that is a
4   provision that is just a few more down the line from that,
5   which is 8 U.S. Code 1184(g)(7).  That provision says that any
6   alien who has already been counted within six years isn't
7   counted again.
8        The significance of that is that the H-1B number is
9   assigned to the individual alien, not to the employer.  So
10  let's say employer A petitions for an H-1B, and they get that
11  H-1B worker.  But then that H-1B worker wants to work for
12  company B.  They can do so; company B will have to file a
13  petition for them.  But they can go over to company B with
14  their H-1B number and take it with them.  Company A can say
15  nothing about it, and they lose the number.  They don't get to
16  go back and say we need another number because we lost our
17  worker.
18        It is alien specific.  The (g)(3) section does really
19  protect -- it protects against this lottery system, and it
20  protects the alien, not the employer.
21        Of course, you need an employer to petition.  But you
22  also need an employee to say, "Yes, I want to take the job."
23  So you need both of them.  I think both have standing.  That's
24  why both petitioners here, you know, their employers are there.
25  Their employees are there.  So that's an important distinction

1    in the statute.

2         As far as the Hispanic case that was just mentioned

3    involving H-2A workers, I think that's actually significant in

4    that in an H-2A case, and that can be H-2B or H-2A -- it is a

5    different category, but it is also a non-immigrant visa, just

6    like in H-1B.  H-1B cannot be filed without a listed intended

7    beneficiary, which is completely unlike the H-2A or H-2B

8    category, which allows the listing of unnamed beneficiaries.

9         So, for example, an employer can list 100 unnamed

10   beneficiaries on an H-2A or H-2B case.  If the person doesn't

11   get their visa, they can move on to a new unnamed person.  So

12   this is really completely different from the situation of an

13   H-1B.

14         Now, with regard to the length of time that someone

15   is in the United States, I think it really just comes back down

16   to what is an injury that is cognizable under Article III and

17   under prudential considerations.  Drawing the line as immigrant

18   versus non-immigrant is a simplified, and it is not a good line

19   to draw because you can have an H-1B come into the

20   United States for three years, work three more years, for six

21   years total.  There are also provisions allowing them to extend

22   that beyond the six years if they have an immigrant petition

23   begun for them.

24         This is actually more time than even a conditional

25   permanent resident who is given just two years, such as the

 1   EB-5 immigrant investors or a spouse of a U.S. citizen.   So
 2   while it is possible for those conditional residents to remove
 3   the conviction, if they don't, they are no longer a permanent
 4   resident, and that's a two-year period.
 5           These individual plaintiffs, they've lost the
 6   opportunity to be in line for one of these H-1B visas.   They
 7   have lost many years of wages that they could be potentially
 8   earning.   In the case of Mr. Sinienok, which is one of the
 9   named plaintiffs, his offered wage was 90,000 a year.   So
10   that's $270,000 over a three-year period.   That's not
11   insignificant.
12           Some of these people, including Ms. Xiaoyang Zhu,
13   must either leave the U.S. or return to school at great
14   expense.   So it is an injury.   Just like many of the
15   other class members have outlined in their declaration,
16   including Ms. Leung, who has lost the lottery for three years,
17   and she is unable to have an H-1B number that she could use to
18   freely move between employers.
19           So losing a place in line for one of these visas is
20   an injury because you are not assured a visa if you are just
21   prepared to wait.   You have to get lucky in the lottery.
22   (g)(3) protects against that.   It protects the individual, not
23   the company.   That's what I would have to say about the
24   individuals
25           THE COURT:   All right.   Thank you.

1    Let's go back to Mr. Press.  If you want, you're

2    welcome to do a reply or rebuttal with respect to your argument

3    on zone-of-interest standing for individuals.  Then whenever

4    you're ready, you're welcome to move on to zone-of-interest

5    standing for the employer-plaintiffs.

6         MR. PRESS:  Thank you, Your Honor.

7         Very briefly on the zone-of-interest standing.

8    Plaintiffs' counsel does directly cite to 1184(g)(3) and

9    focuses on the word "aliens," which is the first word of

10   (g)(3).  He neglects to talk about how the remaining words in

11   that first clause of that paragraph are, "who are subject to

12   the numerical limitations of paragraph 1," which refers right

13   back to our argument that the caps exist.  The reason they

14   exist is to protect the American workforce, not non-immigrant

15   workers that want to come over here for an unlimited period of

16   time and make $90,000 when an American worker might be able to

17   fill that spot for an organization him or herself.

18        The reason why the caps are there and the reason why

19   the remainder of the language in (g)(3) is there is not to

20   protect individual beneficiaries.  It is to protect, at best,

21   the petitioning companies, and the caps are there to protect

22   the American workforce.  It is a balance.

23        Now, with respect to the argument of there is no real

24   distinction between immigrant versus non-immigrant workers, I

25   can tell you, and I think Your Honor would understand this very

1    clearly, Congress takes immigrants who are here under a green

2    card, they take that very seriously, because when you have a

3    green card, you have a pass to citizenship.  When you are not

4    here with a green card, and you are a non-immigrant worker who

5    is here for a finite period of time, that path does not exist.

6         It is very clear that Congress takes that very, very

7    seriously.  It is an extremely debatable point, a policy point

8    right now.  It is not for the courts to get involved to muddy

9    that order that Congress has tried to demarcate here with

10   eliminating 1184(g)(1) and (3).

11        With respect to the argument regarding (g)(7) and the

12   allocation of a number with each petition, that is to help,

13   again, the petitioning companies keep their records straight

14   rather than the individual beneficiaries.  The language is

15   there, if they submit another petition -- it is there to help a

16   company track those positions.  It is not about individual

17   non-immigrant workers.

18        The process cannot begin without the employer, and

19   they're the ones who put that in.  Now, a lot of what opposing

20   counsel has discussed relates to constitutional Article III

21   standing and injury.  Although we feel that our arguments are

22   based on solid case law against constitutional injury, in fact,

23   at least with respect to how the plaintiffs had originally

24   pleaded, the individual plaintiffs had originally pleaded, we

25   do note that there is a big difference between zone-of-interest

1    standing and constitutional standing.

2            Just because someone may be inconvenienced a while,

3    that may be enough arguably for Article III standing, that's

4    not the same thing as a zone-of-interest analysis.  That's why

5    courts who are actually looking at these issues are making that

6    sort of demarcation between, as Your Honor noted, in Shalom

7    Pentecostal's recent decision in Hispanics Affairs Project.

8    There's a real distinction.  It shouldn't be muddy as opposing

9    counsel is seeming to suggest.

10            THE COURT:  I am going to study this issue of

11    zone-of-interest standing for the individual plaintiffs more

12    closely, but there really doesn't seem to be a strong argument

13    that there is not zone-of-interest standing for the

14    employer-plaintiffs, is there?

15            What your argument comes down to is redressability

16    and mootness, but the employers are within the zone of

17    interest; am I correct?

18            MR. PRESS:  That's absolutely correct.  We are not

19    making any argument to the contrary.

20            THE COURT:  All right.  Then let's talk about your

21    standing challenge to the employer-plaintiffs.

22            MR. PRESS:  Okay.  Quite simply, if you look at the

23    declarations that each of the plaintiffs has filed, they

24    request in their complaint declaratory injunctive relief.  They

25    essentially want for Your Honor to force the agency to create a

1   line, and they want a place in that line.  I think they have

2   been very clear about that with their complaint.  I think they

3   are very clear about that in their opposition to our motion.

4           But they are not alleging future injury, which would

5   support the relief that they are now seeking.  Given that the

6   fiscal year is -- we are really less than a month away.  We are

7   a few weeks away from the current H-1B lottery winner

8   beneficiaries coming over here and those visas becoming online.

9           If Your Honor would create a line, certainly going

10  back to 2014 and certainly for everyone, as plaintiffs are

11  making punitive class claims, that would create -- No. 1, it is

12  asking for relief that's purely in the past, and that simply

13  can't be given because those numbers have been exhausted.  Even

14  for this fiscal year, we're in the eleventh hour right now.

15          Giving plaintiffs the relief that they seek with the

16  numbers basically exhausted at this point, in terms of how they

17  allocate and how they conducted the lottery, that would be, we

18  feel, greatly unfair.  What they are actually asking for would

19  be for Your Honor to stop the issuance of those visas right now

20  within basically two weeks from coming online and to start the

21  process over so a new line could be formed.  Once we create

22  that new line, then on a rolling basis everything will be

23  hunky-dory for them.

24          THE COURT:  Mr. Press, that's not the way I read

25  their complaint.  In a few minutes we will hear from

1    Mr. Renison, and I know you are not done.  But let me just tell

2    you how I'm reading it.  One of the things they are asking for

3    is prospectively -- going forward for fiscal year 2018.  They

4    don't want to be constantly subject to the risk that they may

5    or may not be winners in the lottery.  They want the lottery

6    process eliminated.  They want to be able to hire these

7    particular employees that the employers want to hire, and they

8    want at least the knowledge that, depending upon where they

9    fall within the line, they will either get to hire the people

10   they want sooner rather than later, or worst-case scenario,

11   later rather than sooner, but they will have the certainty of

12   knowing that eventually they will be able to hire the people

13   they want because of a first come/first serve place as opposed

14   to constantly being under the risk that they may or may not win

15   a lottery.

16            Let me just briefly ask, Mr. Renison, do I understand

17   that aspect of your requested relief correctly?

18            MR. RENISON:  Your Honor, I could have stated it

19   better.

20            THE COURT:  Okay.  So if that's the requested relief,

21   Mr. Press, why isn't that at least redressable?  By the way,

22   don't nobody mistake, I'm not ready to opine on the merits.  If

23   we get to the merits, we have a lot more briefing and a lot

24   more argument.  But that's what they are asking for.  And if

25   they are legally entitled to that relief, essentially what they

1    are asking for is they want certainty rather than risk.

2              Mr. Press.

3              MR. PRESS:  Understood.  The fundamental problem is

4    that they, in the declarations they've submitted within the

5    last week, have never stated that they are going to submit an

6    application again.

7              THE COURT:  Well, that's pretty easily fixable.  I'm

8    not quite sure I agree with you, but that's at least not

9    implied.  But even if that is correct, that seems pretty

10   fixable.

11             Mr. Renison, do your employer-clients intend to

12   submit applications for fiscal year 2018 for these employees

13   and for these positions?

14             MR. RENISON:  Yes, Your Honor.  In fact, I think it

15   is stated clearly.  If it isn't, it can be.  But I believe it

16   is stated clearly that the requested relief is to resubmit the

17   rejected petition and not have to resubmit a new one.

18             THE COURT:  I also don't think that makes a whole lot

19   of difference.  Even if you had to submit a new one, as long as

20   going forward you were not subject to lottery, then that's part

21   of the relief that I think you would be asking for.  Maybe you

22   would prefer not to have to resubmit.  But even if you do, that

23   would solve your problem.

24             Am I correct?

25             MR. RENISON:  Yes, Your Honor.  That is

1    essentially -- we're requesting the ability to resubmit a

2    petition.  But if it were an opportunity to submit a newly

3    prepared petition, that would redress the harm.  The only thing

4    that might be different is that some of the class members have

5    submitted petitions in prior years and really should have

6    precedence over those who file later.  It really comes down to

7    the date order.  But whether it is resubmitting, as we've

8    requested, or having the opportunity to submit with a priority

9    date, either one, we are getting more than the risk associated

10   with the lottery.

11          THE COURT:  I understand.  Let me just tell you

12   analytically how I'm approaching the pending motion to dismiss,

13   because I think for standing purposes I cannot and should not

14   consider any of the putative class members.  We first have to

15   figure out do the existing named plaintiffs have standing?  If

16   they do not have standing, it does not matter whether some

17   putative class members may or may not have standing.

18          So Question No. 1 for me on this motion to dismiss

19   is, do the named plaintiffs, the two employer-plaintiffs

20   specifically, do they have standing?  I'll also consider the

21   named employee-plaintiffs.  But for purposes of the motion to

22   dismiss, I'm not considering the putative class members.  If I

23   were to deny the motion to dismiss, then I think the next step

24   would be to decide whether we go to summary judgment first or

25   whether we go to class certification first.  But for right now,

1    for purposes of the motion to dismiss, I am not considering any

2    of the putative class members' possible positions.

3        I will give you a brief opportunity, Mr. Renison, to

4    try to talk me out of it if you think I'm wrong, but I don't

5    think I'm wrong.  How is that for putting pressure on you?

6        MR. RENISON:  I believe you are correct there.  If I

7    may, the declaration -- may I speak to a declaration that does

8    speak to the resubmission?

9        THE COURT:  Please.

10        MR. RENISON:  Declaration/Document No. 22,

11    Declaration of Per Casey.

12        THE COURT:  He is the president of Tenrec.

13        MR. RENISON:  He is the president of Tenrec.  On page

14    3, paragraph 9, it is stated, "On behalf of Tenrec, Inc., I

15    support the request in this lawsuit to have the option to

16    resubmit the petition that was filed by the company on behalf

17    of Mr. Sinienok for a priority date."

18        THE COURT:  That's what I thought.  I didn't recall

19    that's where it was, but I recall seeing that somewhere.

20        So I do think, Mr. Press, that they have adequately

21    pled that it is their intention to resubmit their petitions and

22    all they are seeking now -- not all -- but one of the things

23    that they are seeking as part of their relief is the

24    opportunity to get in line and get some certainty, even if they

25    have to wait, as opposed to constantly repeated participations

1   in a lottery and the risk that that entails.

2           Let's move on from that point.  I think they have

3   pled that requested relief.

4           MR. PRESS:  Your Honor, if I might, very briefly.

5           THE COURT:  Sure.

6           MR. PRESS:  With respect to the petitions that were

7   filed in April of this year, and certainly with respect to the

8   other putative class members' past petitions, the problem with

9   that is essentially that the ship has sailed on those.  More

10  specifically the problem is that in those applications, the one

11  that was filed April 2016, rather than having to resubmit for

12  April 2017, if you just accept what they submitted earlier this

13  year, the problem with that is the labor condition application

14  will be stale at this point.  That's because there has to be --

15  there is a adaptation in these applications as to what the

16  correct prevailing wage was at the time.

17          Now, as Your Honor I'm sure understands, those

18  prevailing wages change with those dates.  Using the 2014

19  application, which Mr. Renison has proposed, we would certainly

20  be using old-wage adaptations.  The same thing would apply to

21  the application that Tenrec submitted this year.

22          THE COURT:  Mr. Press --

23          MR. PRESS:  Getting the agency to accept stale

24  prevailing wage certifications sort of creates this problem

25  when they are analyzing each of the applications they are

1    looking at as to whether they are adequate under the prevailing

2    statutes and regulations.  Certainly with the prevailing wages,

3    we don't want to incentivize employers to have non-immigrant

4    workers come into the country and pay them less than the

5    prevailing wage, because that would keep wages down arbitrarily

6    for the entire American workforce while that is, of course,

7    exacerbating the American workforce employment.

8            THE COURT:  Mr. Press, I understand what you are

9    saying.  Maybe I compartmentalize things too much, but I don't

10   think so.  What I'm hearing from you is an argument that may or

11   may not be strong; it may or may not be valid; that may go to

12   why, even if the plaintiffs are right on the merits, they

13   shouldn't get that particular avenue of relief.  It may be an

14   argument why we shouldn't certify a class.  That's fine.  We

15   will get there if and when we have to get there.

16           But right now we're just talking about a motion to

17   dismiss arguing lack of subject matter jurisdiction.

18   Specifically with respect to the employer-plaintiffs, are their

19   grievances redressable?  What I'm hearing that argument you've

20   just made tell me is, well, they may not be redressable in the

21   specific alternatives that plaintiffs are proposing in that

22   respect, but at least with respect to one avenue of plaintiffs'

23   requested relief; namely, prospectively going forward for

24   fiscal year 2018, they don't want to have to be subject to the

25   risk of a lottery.  They want to be able to get online and know

1   that eventually they will get their employment needs satisfied

2   if they submit a timely and complete petition with up-to-date

3   wage information and everything else that's required.

4           Well, maybe that might be the only relief that they

5   would be entitled to if they even win on the merits.  But at

6   least that does seem to satisfy the redressability hurdle, and

7   all of your other arguments would either go toward why they

8   shouldn't be entitled to other forms of requested relief, maybe

9   why they shouldn't be entitled to class certification, but I

10  think they have satisfied the redressability prong of standing.

11          Am I missing something?

12          MR. PRESS:  But if they could -- I want to be very

13  clear, my client, the agency, does not have these applications

14  anymore.  What happens is they literally do not receive them

15  after the statutory caps and the lotteries have been completely

16  conducted.  The documents that my client has is evidence that

17  that application was submitted, but they don't have the

18  application.

19          THE COURT:  All right.

20          MR. PRESS:  So for these plaintiffs in particular,

21  even the organizational ones, they need to resubmit those

22  applications.  For them to have truly just injuries now in this

23  fiscal year, what the plaintiffs are essentially asking for

24  would create chaos to use that old application and create a

25  line right now.

1            Now, you are certainly correct with respect to fiscal

2    year 2018, if they conclude their complaint, not just that they

3    support to have the option to resubmit, which is what's in

4    paragraph 9 of Per Casey's declaration, but that they are going

5    to resubmit, then they have standing for injunctive and

6    declaratory relief under Ninth Circuit case law.  They don't

7    have that in the complaint.  They don't have that in the

8    declarations.

9            THE COURT:  Mr. Renison, is it your

10   employer-plaintiffs' intention to resubmit?

11           MR. RENISON:  Yes.  On all counts, yes.

12           THE COURT:  Okay.  Well, then maybe procedurally we

13   need to grant leave to amend the complaint for the plaintiffs

14   to allege that, but it does sound like once they have alleged

15   that, they are going to have standing.

16           MR. PRESS:  We would agree, Your Honor.

17           THE COURT:  Okay.  Then I think that takes care of

18   that.

19           I need to figure out whether the employee-plaintiffs

20   have standing, but we know that the employer-plaintiffs will

21   have standing, because I'm going to give the plaintiffs leave

22   to replead.

23           All right.  Is there anything else that we should

24   talk about now other than maybe map out a chronology how we go

25   forward?  What else do we need to talk about now other than the

1    plan for going forward?

2              Anything further, Mr. Press?

3              MR. PRESS:  Not from us, Your Honor.

4              THE COURT:  Mr. Renison?

5              MR. RENISON:  No, Your Honor.

6              MR. PRESS:  Actually, Your Honor, I'm sorry.  I have

7    forgotten.  With respect to the current motion for class

8    certification and summary judgment, if Mr. Renison takes

9    Your Honor's cue, if you do grant leave to amend, we would

10   request that the motions for summary judgment and class

11   certification sort of correlate with the new amended complaint

12   alleging that they intend to resubmit these applications, for

13   example.

14             THE COURT:  I understand.

15             All right.  So I think the right way to proceed is

16   for me to decide the pending motion, and I'll tell you right

17   now that the easy part of it is, with respect to the

18   employer-plaintiffs, the minimum I'm going to say that the

19   plaintiffs have leave to replead to allege that, among other

20   relief, and I'm not going to right now preclude the plaintiffs

21   from seeking whatever relief they choose to seek.  They may or

22   may not get it down the road, but now is not the time to decide

23   that.

24             But I'm certainly going to allow the plaintiffs to

25   replead with respect to the employer-plaintiffs that they

 1   intend to resubmit their applications for the 2018 fiscal year,

 2   and if they do, then they have standing.  I probably also need

 3   to decide relatively soon whether the employee-plaintiffs are

 4   within the prudential considerations of standing, the

 5   zone-of-interest standing.  By the way, I really do think that

 6   they satisfy Article III standing.  I don't even think that's

 7   close.  But with respect to the zone-of-interest and prudential

 8   standing, I will take a further look at that.

 9          If they do, then so be it.  They probably then also

10   should be repleading that if they are eligible, or as they put

11   in their declaration, if the employers get permission or if

12   they get the visas that are sought, that they would intend to

13   accept the positions for which they are seeking, and they put

14   that in the amended complaint.

15          So I'll try to get an answer on that question to you

16   all.  I think I can be able to do it by the end of next week, a

17   week from Friday.  We will get you our decision.  Then I'll

18   give plaintiff two weeks to file an amended class action

19   complaint.  Then we move forward, and we will then talk about

20   whether we proceed with plaintiffs' summary judgment or with

21   class certification next.

22          I'll tell you my initial thinking on it now so both

23   of you can think about it, and you're welcome to share with me

24   your thoughts now or later.  But my reaction is we probably

25   should deal with cross-motions for summary judgment before we

1   tackle the issue of class certification, because the real guts

2   of the question here, as I see it, is whether or not the

3   current procedures employed by the U.S. Citizenship and

4   Immigration Services does or doesn't violate the statutory

5   directive of first come, first served.

6         I think that's the guts of this issue.  If it doesn't

7   violate that statute, we're done.  We don't need to deal with

8   class certification.  We don't need to deal with the question

9   of remedy.  But if it does violate it, then we need to deal

10   with, well, what's the right remedy going forward for these

11   particular plaintiffs?  Is it prospective only, as I have been

12   describing in this call?  Is there a component that's

13   retroactive?  As I'm hearing Mr. Press argue, it is just not

14   possible, and usually courts don't order the impossible, or at

15   least when they do, they don't have a very successful time

16   implementing that order, but we will see.

17         And we will also be in a better position to evaluate

18   whether there is any point to class certification; whether it

19   will really accomplish anything that would not otherwise be

20   accomplished by purely prospective relief.

21         And then finally, the other comment that I want to

22   add right now, and then I'll turn it over to you, if somebody

23   wants to say something, I have been giving some thought to this

24   ultimate question of whether or not the current procedures

25   employed by Citizenship and Immigration Services does or

1    doesn't violate the statutory directive.

2              Here, I want to make sure that both parties, when you

3    get around to briefing this and arguing this before me, really

4    give me the current state of the art of the U.S. Supreme

5    Court's analysis and methodology of how to interpret statutes.

6    Interpreting statutes isn't that easy.  Obviously we know from

7    a few years ago and more recent cases than just these two, but

8    the Supreme Court's decision in 2012 that upheld the

9    constitutionality of the Patient Protection and Affordable Care

10   Act.  That's the decision of National Federation of Independent

11   Business v. Sebelius, 132 S.Ct. 2566.  That's the 2012

12   decision.

13             That decision, although it has plenty of dissents,

14   that decision is the Supreme Court telling us how we should go

15   about interpreting congressional statutes.  Even last year we

16   saw from the Supreme Court in the case of Yates v.

17   United States.  That's the Justice Kagan decision, "One Fish

18   Two Fish Red Fish Blue Fish," a fish is not a tangible object.

19   That's 135 S.Ct. 1074, decided February 25th, 2015, and there

20   are other cases from the Supreme Court.

21             So I just want to make sure, as we struggle with the

22   question of whether or not the U.S. Citizenship and Immigration

23   Services' current regulations correctly interpret and apply the

24   statute or are inconsistent with the statute, we look at not

25   only the question of deference to an agency interpreting a

1    statute, the Chevron deference, but we also make sure that we

2    interpret the statute in connection with the most current

3    thinking from the U.S. Supreme Court that obviously binds this

4    District Court.

5            So that's why my tentative thinking is -- first of

6    all, the motion to dismiss will be denied.  Some portion of

7    this case is going forward, even if it is just the

8    employer-plaintiffs.  Then my tentative thinking is, we

9    probably should deal on cross-motions for summary judgment on

10   the $60,000 question, the main question of whether or not what

11   the agency is doing does or doesn't violate the statute.

12           Maybe we will leave remedy aside for now and just

13   deal with that question, because, as I said, if it doesn't

14   violate the statute, I think the dispute is over.  If it does

15   violate the statute, then we will brief and discuss what's an

16   appropriate remedy prospective, prospective plus retrospective,

17   individual plaintiffs, or individual plus class.  And we will

18   tackle those issues later.

19           But I tend to approach it sort of one question at a

20   time in what is a hopefully a logical and reasonable order.

21   That's my tentative thinking.

22           Does anybody want to be heard on any of that or

23   anything else at this time?  I'll start with counsel for

24   plaintiff and then move to counsel for defendant.

25           Mr. Renison

1          MR. RENISON:  Thank you, Your Honor.

2          I have no particular comments other than there is

3    perhaps the request from defendants to conduct some discovery,

4    and I don't know, in light of this motion, whether they will

5    still seek that.  That was in connection with the class motion,

6    which is in order going to be considered last.  I just want to

7    thread the issue because the Government has asked for some kind

8    of discovery.

9          Our concern is simply that we have enough time before

10   we are subjected to the lottery again.  I do want to speak to

11   this just briefly because I feel there is some conclusion from

12   the briefing that I think maybe that the Government has with

13   regard to our remedy.  It is clear to me that in cases where

14   numbers of visas are numerically limited -- through reading

15   other cases -- that once those visas are allocated, even if

16   they are allocated incorrectly, they are gone.

17         They have already allocated all of the 2017 numbers

18   for fiscal year 2017.  But we have a chance having an orderly

19   distribution of this fiscal year 2018 numbers, which if we are

20   into April, the notices that our plaintiffs received was, "Yes,

21   please submit your application again on April 1st," at which

22   time it is highly likely there is going to be a lottery.  I

23   can't see that there won't be one, with the bar chart of

24   numbers of petitions in the hundreds of thousands.  So I'm

25   worried about the time.  That is my only concern, is the time

```
 1   and the request from the defendant to do discovery on the

 2   class.

 3              THE COURT:  Well, with respect to the latter point

 4   first, and I'll turn to Mr. Press in a few minutes.  If the

 5   parties want to conduct discovery on something, and my practice

 6   is, in the first instance, discuss it among yourselves.  If

 7   both sides can agree, then fine, you don't need Court

 8   intervention.  If there is a disagreement, if someone wants the

 9   Court to either order discovery or order that discovery be

10   suspended or abated for a period of time until something else

11   happens, by all means come contact the Court, and I will hear

12   your dispute and make a ruling.

13              By the way, both sides are free to contact my

14   courtroom deputy, Mary Austad, by e-mail any time you can't

15   resolve something.  Now, you have to first confer, and if you

16   confer and can't resolve it, that's what I'm here for.  So

17   contact my courtroom deputy probably by e-mail, copy the other

18   side, and let her know that you need the Court's assistance.

19              We will probably ask for some brief -- not a brief --

20   but we will ask for a relatively succinct explanation, probably

21   in an e-mail, what the dispute is.  Then we will get on the

22   telephone and talk our way through it.  If I can resolve it in

23   that fashion, fine.  If you think it is more appropriate to

24   file briefs, just tell me, and I'll give you leave to file a

25   brief.
```

1          By the way, related to that, no motions to compel may

2    be filed without prior leave of court.   The way you get prior

3    leave of court is by contacting the courtroom deputy and

4    scheduling a conference with me.   It will probably be by

5    telephone.   So work out the discovery issues yourselves.   But

6    if you don't reach an agreement, by all means let me know what

7    the dispute is, and I'll resolve it for you.

8          I also tend to resolve things relatively quickly,

9    relatively efficiently.   So with respect to your first point,

10   Mr. Renison, it is now mid-September.   I will get you a

11   decision on the motion to dismiss probably by the end of next

12   week, so figure in about ten days or so, or less.   Then you

13   will have ten days to file your amended complaint.   But then

14   maybe the right thing to do is get on the phone again and put

15   together a schedule going forward.

16          I still think the right thing to do is to have

17   cross-motions for partial summary judgment on liability

18   questions only; namely, the cross-motions on how to interpret

19   that statute and whether that statute does or does not conflict

20   with what's currently being done.   That's partial

21   cross-examinations for summary judgment.   If those are filed,

22   frankly, talk among yourselves after this call when you want to

23   do it, but if you all file those sometime in early October,

24   maybe we will have responses by the end of October or early

25   November, replies by mid-November or the end of November.   We

1    can have an oral argument on that in December.

2            I will assure you that I will give you a decision no

3    later than 60 days after oral argument, and, frankly, what I

4    typically do is within 30 days of oral argument.  It depends

5    how complicated the dispute is and how busy I am.  But you will

6    get a decision from me within 30 to 60 days.  In any event,

7    worst-case scenario under this schedule, you will be getting

8    your decision by January or February of next year.

9            Now, I know that's only on liability issues.

10   Assuming plaintiff wins, and by the way, don't read anything

11   into that, because obviously if plaintiff loses, then we're

12   done, and plaintiff can appeal my decision.  But if plaintiff

13   wins, then we will have to talk about relief, maybe even

14   preliminary injunctive relief.  Maybe we will move straight and

15   quickly and efficiently to final injunctive relief.  It depends

16   on how we fit in the class certification issue.

17           But don't forget, Mr. Renison, whatever I do is not

18   the end of the story.  Even if I rule in your favor and

19   whatever injunctive relief I order, defendant is going to have

20   their right to appeal to the Ninth Circuit.  And if they lose

21   there, they will have the right to petition the Supreme Court.

22   Obviously if defendant wins, you will have the right to

23   petition to the Ninth Circuit and petition for cert. to the

24   Supreme Court.

25           So I'll move as reasonably efficiently as we can.

1    Assuming that you all can brief things efficiently, I'll issue

2    decisions efficiently.  I think that should take care of the

3    scheduling issues that you raised, Mr. Renison, as much as

4    realistically one can expect, unless you decide you want to

5    file a motion for preliminary injunction, but I think it is a

6    little premature for that, at least at this time.

7            Let me turn to Mr. Press to see if you have any

8    comments, and I will go back to Mr. Renison for any further

9    thoughts.

10            MR. PRESS:  We are fine with what Your Honor has

11    outlined, that approach.  It doesn't present any problems for

12    us.

13            THE COURT:  Any further thoughts, Mr. Renison?

14            MR. RENISON:  Only to clarify, Your Honor.  There is

15    a current order holding in abeyance any discovery until the

16    decision on the motion to dismiss.  Shall the parties wait

17    until after the decision is issued to engage in discovery?

18            THE COURT:  What would you all like?  Any preference?

19    By the way, I'm still having a hard time understanding what

20    discovery is needed, at least on the liability side of this,

21    without considering class certification.

22            What would you all want?  It is fine with me to lift

23    that order right now.  It is fine for me to let it stay until

24    next week.

25            What do you all want?

1          MR. PRESS:  Your Honor, if I might, for the

2     defendants, we only want discovery with respect to class

3     certification and those issues, specifically the adequacy.  We

4     want to know more about the organizational plaintiffs.  Of

5     course, if Your Honor allows for the individual plaintiffs, we

6     will want to know more about them in terms of the adequacy to

7     represent the class.  If we never get to that issue, then we

8     don't have an inclination to take discovery along the lines.

9          We definitely agree with you, that considering that

10    this is a typical APA case in this posture right now, the

11    normal procedure is to not allow for discovery and just proceed

12    on the record.  Now, what constitutes the record in this case,

13    if Your Honor would like some of the comments and things like

14    that, things that were considered in terms of putting together

15    the 2008 regulation, we could try to do that.  Or if it is

16    simply the record, i.e., the applications that the

17    organizational plaintiffs submitted to USCIS, we can proceed on

18    that.  It sounds like from Your Honor's comments, given the

19    file date and this is a statutory interpretation case, if you

20    don't feel like you need any record, that's also fine for us.

21          THE COURT:  Sure.

22          Mr. Renison, what's your view?  You have heard that I

23    really think -- and I could be missing things, and I'm

24    certainly open to what you both have to say.  But I think it is

25    a statutory interpretation case; that is, does the way that it

1    is currently being operated violate the statute?

2           I don't think that we need an administrative record.

3    I don't see how that would help us.  I also don't see how fact

4    discovery would be relevant to that.

5           What do you think, Mr. Renison?

6           MR. RENISON:  Your Honor, I don't think there are any

7    facts that would be drawn out in discovery at all for any of

8    the motions.  It is purely just trying to get what the

9    Government would like as soon as possible so that they are

10   satisfied with their request.

11          THE COURT:  Okay.  Well, it sounds like if the

12   Government wants to take discovery from the individual named

13   plaintiffs, it doesn't sound like you are going to oppose.

14   Whether the Government does or doesn't want to take that

15   discovery right now, I'll leave it up to them.  I'm not going

16   to order them to take discovery right now if they don't want

17   to.  But it sounds like if they want to, you are not going to

18   oppose that, so we don't have a problem.

19          What about the issue of an administrative record?  I

20   know this is to some extent governed by the APA.  Do you think

21   there needs to be any type of administrative record lodged?

22          MR. RENISON:  Well, Your Honor, I don't think an

23   administrative record is necessary for the disposition of any

24   of these motions.  I provided a copy of what was filed and was

25   sent back to us to the other side as part of the declaration on

1    each of the organizational plaintiffs representatives.  We

2    included a copy of the rejection notice in the filing.  So from

3    my perspective, it is really statutory interpretation and does

4    not have to have any kind of record.

5            THE COURT:  So if I'm hearing both sides correctly,

6    both sides agree that there is no need for any further lodging

7    of any administrative record.

8            Now, one thing I'll suggest, maybe in the interest of

9    moving this along and being efficient, do you want to agree on

10   a deadline and maybe even a briefing schedule for cross-motions

11   for partial summary judgment on questions of liability?  We

12   will get the amended complaint received here in due course, and

13   you will know in about a week and a half whether it should or

14   shouldn't include individual employee-plaintiffs, but that's

15   not really going to matter to the underlying legal question.

16           So shall we put together a schedule right now for

17   both sides to file cross-motions for partial summary judgment

18   on liability issues?  By "liability issues," that means

19   question of whether or not the current practice of the

20   defendant does or doesn't violate the relevant statute.  Should

21   we set that schedule now?

22           MR. RENISON:  Yes.  Your Honor, plaintiffs would like

23   to have a schedule set.  In terms of the time to file an

24   amended pleading, I would only need a week after the decision.

25           THE COURT:  Okay.  Then I'll give you one week after

1   the decision.

2          Let me get my calendar open here.  If we assume you

3   get a decision no later than 9-23, we will have the second

4   amended complaint due 9-30.  So let's assume that comes in.

5   When would you all propose would be the right time to file

6   cross-motion for partial summary judgment?

7          MR. RENISON:  Your Honor, from our perspective, I

8   have already prepared and filed a motion for summary judgment

9   that can be prepared in the manner in which you have directed

10  relatively quickly.  So any time is fine with me.  I think it

11  might be the Government's call on that.

12         THE COURT:  By the way, to keep things clean, what I

13  would like to do, just to keep our records clean, I would like

14  to deny without prejudice plaintiffs' motion for summary

15  judgment, Docket 11, and deny without prejudice, Docket 10, the

16  motion for class certification.  So we will get to those when

17  we get to those.  But at least right now it is not going to

18  show up on our docket system as pending motions that haven't

19  been fully briefed, let alone decided.

20         Any objection to that, Mr. Renison?

21         MR. RENISON:  No, Your Honor.

22         THE COURT:  Thank you.

23         MR. PRESS:  The Government doesn't object to that

24  either, Your Honor.

25         THE COURT:  Very good.  Thank you, Mr. Press.

1          When, Mr. Press, do you think the Government would be

2    prepared to file its cross-motion for partial summary judgment

3    on liability issues?  What I'm envisioning, by the way, is each

4    side will file their motion for partial summary judgment on

5    liability.  Then at some appropriate time after that, each side

6    will respond.  Then at some appropriate time after that, each

7    side will reply, and then we will have oral argument.

8          So when do you think would be a reasonable time,

9    Mr. Press?

10          MR. PRESS:  Well, without having seen the amended

11    complaint, I don't want to say that we will not file another

12    motion to dismiss under Rule 12.  I think given Mr. Renison's

13    position that he has already filed the motion for summary

14    judgment, we agree with that.  We have seen it.  We have looked

15    at it.  Would three weeks be okay?

16          THE COURT:  That's fine with me.

17          By the way, you are welcome also to file motions to

18    dismiss or partial motions to dismiss, but I would also like to

19    keep moving on getting the ultimate legal question resolved.

20          So if the second amended complaint is filed on

21    September 30th, three weeks after that is October 21st.  So

22    will that work for everyone filing partial motions for summary

23    judgment, October 21st?

24          MR. PRESS:  Yes.

25          MR. RENISON:  Yes, Your Honor.

1            THE COURT:  What we normally do in this district, we

2   have three weeks for responses for summary judgment.  That

3   would be November 11th.

4            Will that work for everyone for responses?

5            MR. PRESS:  Is that a holiday?

6            THE COURT:  Yes, it is.  Sorry about that.

7            Do you want the following Monday?

8            MR. PRESS:  Yes, Your Honor.  As a government

9   employee, we take those days very seriously.

10           THE COURT:  No comment.  But that's fine.  You can

11  have Monday, even if you don't take them seriously.

12           Responses due on November 14th.  Then two weeks

13  afterwards for reply will be November 28th.  I can't do that to

14  you.  That's like the Monday after Thanksgiving.  So let me

15  give you until Friday.  How about replies due December 2nd.

16           Is that fair?

17           MR. PRESS:  Yes, Your Honor.

18           MR. RENISON:  Yes, Your Honor.

19           THE COURT:  And then let's take a look when we can do

20  an oral argument.  I generally like to give myself at least two

21  weeks.  I think the week of December 19th will probably work

22  for us.

23           How are you looking on the week of December 19th?

24  Friday is the 23rd.

25           THE CLERK:  That's a court holiday.

1          THE COURT:  Do you want to do oral argument on

2    Monday, December 19th?

3          By the way, I try to give myself the week off between

4    of Christmas and New Year's in case I do some family vacation

5    time.  So we can do oral argument that Monday or Tuesday, the

6    19th or 20th, or in early January.

7          Do you want the 19th or 20th?

8          MR. RENISON:  I would prefer December 19th.

9          MR. PRESS:  That's fine for the Government as well,

10   Your Honor.

11         THE COURT:  Monday, December 19th, for oral argument.

12   I'm assuming you want to do it in person as opposed by phone?

13         MR. PRESS:  Yes, Your Honor.

14         THE COURT:  So what's better for your travel?  If we

15   do it in the morning, obviously you'd travel out here on

16   Sunday, the 18th, but then you can get out of here in the

17   afternoon.  It is not that hard getting out.  Do you have any

18   preferences, morning or afternoon?  I will give you whatever

19   you want.  If you want, I'll even give you Tuesday morning, so

20   you fly out on Monday.

21         MR. PRESS:  Whatever is most convenient for opposing

22   counsel and the Court.  As far as I'm concerned, Portland is

23   beautiful even in the winter, so whenever it is convenient.

24         THE COURT:  All right.  Any preference, Mr. Renison,

25   morning or afternoon?

```
 1              MR. RENISON:  The afternoon would be preferrable.

 2              THE COURT:  Okay.  Let's set oral argument for

 3   Monday, December 19th, at 2:00 p.m.  This may be complicated,

 4   so if you need to, Mary, let's not set anything else that

 5   afternoon.

 6              Okay.  Then I think we have that scheduled.  We will

 7   issue a minute order on these issues.

 8              Is there anything else that anyone would like to

 9   address in this call?  I will start with plaintiff,

10   Mr. Renison.

11              MR. RENISON:  No, Your Honor.  Thank you.

12              THE COURT:  Thank you.

13              Mr. Press.

14              MR. PRESS:  Only with respect to discovery, I want to

15   make it clear, we were only interested in pursuing discovery

16   for the class claims.  We consider that to be a very narrow

17   issue for discovery.  We don't want discovery outside of that.

18   Normally in APA cases there is no discovery whatsoever.

19              THE COURT:  So it sounds like we're not going to be

20   needing any discovery, at least from defendants' perspective,

21   at least until we resolve this issue on the partial summary

22   judgment on liability questions.

23              MR. PRESS:  That's correct.

24              THE COURT:  Okay.  That's fine.

25              As I said, though, if either of you need anything
```

1   from the other, confer with each other.  If you reach

2   agreement, whatever you choose to do will be fine with me.  If

3   you can't reach an agreement, contact my courtroom deputy, and

4   I will be glad to intervene and help.  I think that takes care

5   of everything for today.  We will get a minute order out.

6               Thank you very much.

7               COUNSEL:  Thank you, Your Honor.

8               (Recess.)

1

2                        --oOo--

3

4           I certify, by signing below, that the foregoing is a

5      correct transcript of the record of proceedings in the

6      above-entitled cause.  A transcript without an original

7      signature, conformed signature, or digitally signed signature

8      is not certified.

9
       /s/ Dennis W. Apodaca                    April 28, 2017
10     DENNIS W. APODACA, RDR, RMR, FCRR, CRR              DATE
       Official Court Reporter
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

COUNSEL: [1] 46/6
MR. PRESS: [39]  3/3 5/8 6/7 6/12
6/17 7/7 7/10 7/25 8/14 10/12 10/15
10/20 11/7 11/11 16/5 18/17 18/21
21/2 24/3 24/5 24/22 26/11 26/19
27/15 28/2 28/5 37/9 37/25 41/22 42/9
42/23 43/4 43/7 43/16 44/8 44/12
44/20 45/13 45/22
MR. RENISON: [23]  3/20 7/6 12/13
20/17 21/3 21/24 23/5 23/9 23/12
27/10 28/4 32/25 37/13 39/5 39/21
40/21 41/6 41/20 42/24 43/17 44/7
44/25 45/10
THE CLERK: [1]  43/24
THE COURT: [58]

$
$270,000 [1]  15/10
$60,000 [1]  32/10
$90,000 [1]  16/16

'
'08 [1]  4/16

-
--oOo [1]  47/2

/
/s [1]  47/9

1
10 [1]  41/15
100 [1]  14/9
1000 [1]  2/24
1074 [1]  31/19
11 [2]  7/21 41/15
1183 [1]  12/17
1184 [6]  12/18 12/19 12/19 13/5 16/8
17/10
11th [1]  43/3
12 [1]  42/12
132 [1]  31/11
135 [1]  31/19
14 [3]  1/5 3/1 3/6
14th [1]  43/12
16 [1]  3/5
16-cv-995-SI [1]  3/7
18th [1]  44/16
195,000 [1]  4/12
1992 [1]  3/25
19th [5]  43/23 44/2 44/8 44/11 45/3
19th or [2]  44/6 44/7
1B [14]  11/19 12/3 13/8 13/10 13/11
13/11 13/14 14/6 14/6 14/13 14/19
15/6 15/17 19/7
1st [1]  33/21

2
2001 [1]  4/11
20044 [1]  2/6
2006 [1]  4/7
2006-2007 [1]  4/17
2007 [4]  4/8 4/8 4/15 4/17
2007-2008 [1]  4/17
2008 [5]  3/16 4/17 5/4 6/7 38/15
2012 [2]  31/8 31/11
2013 [2]  4/21 4/24
2014 [3]  4/24 19/10 24/18
2015 [2]  4/24 31/19

2016WL4734350 [1]  10/21
2017 [4]  24/12 33/17 33/18 47/9
2018 [6]  20/3 21/12 25/24 27/2 29/1
33/19
20th [2]  44/6 44/7
21st [2]  42/21 42/23
22 [1]  23/10
23 [1]  41/3
23rd [1]  43/24
2566 [1]  31/11
25th [1]  31/19
28 [1]  47/9
28th [1]  43/13
2:00 [1]  45/3
2A [6]  10/22 14/3 14/4 14/4 14/7 14/10
2B [3]  14/4 14/7 14/10
2nd [1]  43/15

3
30 [3]  36/4 36/6 41/4
301 [1]  2/24
30th [1]  42/21
326-8182 [1]  2/25
3:16-cv-00995-SI [1]  1/4

5
503 [1]  2/25
505 [1]  2/3

6
60 [2]  36/3 36/6
610 [1]  2/3

8
8182 [1]  2/25
868 [1]  2/5
8th [1]  3/13

9
9-23 [1]  41/3
9-30 [1]  41/4
90,000 [1]  15/9
97204 [1]  2/25
97205 [1]  2/3

A
abated [1]  34/10
abeyance [1]  37/15
ability [1]  31/9
able [5]  16/16 20/6 20/12 25/25 29/16
about [27]  3/25 10/8 11/4 12/5 12/11
13/15 15/23 16/10 17/16 18/20 19/2
19/3 25/16 27/24 27/25 29/19 29/23
31/15 33/25 35/12 36/13 38/4 38/6
39/19 40/13 43/6 43/15
above [1]  47/6
above-entitled [1]  47/6
absolutely [1]  18/18
Abudu [1]  11/14
accept [3]  24/12 24/23 29/13
accepted [1]  5/11
accomplish [1]  30/19
accomplished [1]  30/20
Act [1]  31/10
action [1]  29/18
actually [8]  5/21 8/1 8/20 14/3 14/24
18/5 19/18 28/6
adaptation [1]  24/15
adaptations [1]  24/20

add [1]  45/21
address [1]  45/9
adequacy [2]  38/3 38/6
adequate [1]  25/1
adequately [1]  23/20
administrative [5]  39/2 39/19 39/21
39/23 40/7
Affairs [3]  9/21 10/11 18/7
Affordable [1]  31/9
after [15]  3/16 3/22 5/6 6/2 11/23 26/15
35/22 36/3 37/17 40/24 40/25 42/5
42/6 42/21 43/14
afternoon [6]  3/11 44/17 44/18 44/25
45/1 45/5
afterwards [1]  43/13
again [9]  4/21 9/17 11/12 13/7 17/13
21/6 33/10 33/21 35/14
against [6]  7/1 12/25 13/1 13/19 15/22
17/22
agency [6]  4/1 18/25 24/23 26/13 31/25
32/11
ago [1]  31/7
agree [9]  7/6 7/7 21/8 27/16 34/7 38/9
40/6 40/9 42/14
agreement [4]  7/12 35/6 46/2 46/3
al [3]  1/3 1/6 3/7
alien [5]  12/21 13/6 13/9 13/18 13/20
aliens [3]  12/25 13/2 16/9
all [29]  6/5 6/10 6/10 7/9 7/12 12/7
12/16 15/25 18/20 23/22 23/22 26/7
26/19 27/11 27/23 28/15 29/16 32/6
33/17 34/11 35/6 35/23 37/1 37/18
37/22 37/25 39/7 41/5 44/24
allegations [2]  7/22 7/25
allege [2]  27/14 28/19
alleged [2]  7/2 27/14
alleging [2]  19/4 28/12
alleviated [1]  4/12
allocate [1]  19/17
allocated [3]  33/15 33/16 33/17
allocation [1]  17/12
allotment [1]  5/14
allow [4]  7/19 8/10 28/24 38/11
allowing [1]  14/21
allows [2]  14/8 38/5
alone [1]  41/19
along [3]  11/24 38/18 40/9
already [5]  7/17 13/6 33/17 41/8 42/13
also [15]  3/12 13/22 14/5 14/21 21/18
22/20 29/2 29/9 30/17 32/1 35/8 38/20
39/3 42/17 42/18
alternatives [1]  25/21
although [4]  8/17 12/1 17/21 31/13
am [10]  3/14 11/6 11/11 12/18 18/10
18/17 21/24 23/1 26/11 36/5
amend [2]  27/13 28/9
amended [9]  28/11 29/14 29/18 35/13
40/12 40/24 41/4 42/10 42/20
American [7]  9/13 9/24 16/14 16/16
16/22 25/6 25/7
among [3]  28/19 34/6 35/22
analysis [3]  10/25 18/4 31/5
analytically [1]  22/12
analyzing [1]  24/25
and it [1]  14/18
another [3]  13/16 17/15 42/11
answer [1]  29/15
any [29]  8/9 8/21 13/5 18/19 22/14 23/1
30/18 32/22 34/14 36/6 37/7 37/8
37/11 37/13 37/15 37/18 38/20 39/6

# A

any... [11]  39/7 39/21 39/23 40/4 40/6 40/7 41/10 41/20 44/17 44/24 45/20
anybody [1]  32/22
anymore [1]  26/14
anyone [1]  45/8
anything [9]  3/19 27/23 28/2 30/19 32/23 36/10 45/4 45/8 45/25
APA [4]  10/3 38/10 39/20 45/18
Apodaca [3]  2/24 47/9 47/10
apologize [2]  5/7 6/16
appeal [2]  36/12 36/20
APPEARANCES [1]  2/1
apples [1]  12/5
application [8]  21/6 24/13 24/19 24/21 26/17 26/18 26/24 33/21
applications [13]  5/11 5/19 5/23 6/5 21/12 24/10 24/15 24/25 26/13 26/22 28/12 29/11 38/16
apply [2]  24/20 31/23
approach [2]  32/19 37/11
approaching [1]  22/12
appropriate [4]  32/16 34/23 42/5 42/6
approved [1]  4/4
April [6]  24/7 24/11 24/12 33/20 33/21 47/9
April 1st [1]  33/21
April 2016 [1]  24/11
April 2017 [1]  24/12
arbitrarily [2]  6/1 25/5
arbitrary [1]  6/4
are [86]
arguably [1]  18/3
argue [3]  6/11 6/16 30/13
arguing [4]  5/17 9/9 25/17 31/3
argument [29]  3/5 6/20 8/4 8/11 8/12 8/24 11/15 12/9 12/11 16/2 16/13 16/23 17/11 18/12 18/15 18/19 20/24 25/10 25/14 25/19 36/1 36/3 36/4 42/7 43/20 44/1 44/5 44/11 45/2
arguments [8]  3/14 3/15 6/22 7/10 8/17 10/24 17/21 26/7
around [2]  10/5 31/3
art [1]  31/4
Article [4]  14/16 17/20 18/3 29/6
as [52]
aside [1]  32/12
ask [5]  3/17 12/8 20/16 34/19 34/20
asked [1]  33/7
asking [7]  19/12 19/18 20/2 20/24 21/1 21/21 26/23
aspect [1]  20/17
assigned [1]  13/9
assigning [1]  4/5
assistance [1]  34/18
associated [1]  22/9
assume [2]  41/2 41/4
assuming [3]  36/10 37/1 44/12
assure [1]  36/2
assured [1]  15/20
Austad [1]  34/14
available [3]  4/10 4/18 4/23
avenue [3]  2/24 25/13 25/22
away [4]  4/14 9/13 19/6 19/7

# B

back [8]  12/10 13/16 14/15 16/1 16/13 19/10 37/8 39/25
bag [1]  5/24
balance [1]  16/22

based [3]  6/25 8/3 17/22
basically [3]  3/25 19/16 19/20
basis [1]  19/22
be [74]
beautiful [1]  44/23
became [1]  5/17
because [20]  4/18 7/19 9/8 9/12 13/6 14/19 15/20 17/2 18/22 19/13 20/13 22/13 24/14 25/5 27/21 30/1 32/13 33/7 33/11 36/11
become [1]  5/20
becoming [1]  19/8
been [8]  4/23 13/6 19/2 19/13 26/15 30/11 30/23 41/19
before [12]  1/12 3/9 3/14 3/16 3/22 3/22 4/8 10/10 12/22 29/25 31/3 33/9
began [1]  3/25
begin [3]  6/14 8/10 17/18
begun [1]  14/23
behalf [2]  23/14 23/16
being [8]  5/7 6/16 7/12 8/20 20/14 35/20 39/1 40/9
believe [4]  4/18 8/17 21/15 23/6
below [1]  47/4
beneficiaries [6]  11/11 14/8 14/10 16/20 17/14 19/8
beneficiary [1]  14/7
best [1]  16/20
better [3]  20/19 30/17 44/14
between [6]  6/5 15/18 16/24 17/25 18/6 44/3
beyond [1]  14/22
big [1]  17/25
binds [1]  32/3
blank [1]  11/6
Blue [1]  31/18
both [12]  8/13 13/23 13/23 13/24 29/2 31/2 34/7 34/13 38/24 40/5 40/6 40/17
bottom [2]  5/25 6/1
Box [1]  2/5
Brent [1]  2/2
brief [10]  9/23 10/23 10/24 11/15 23/3 32/15 34/19 34/19 34/25 37/1
briefed [1]  41/19
briefing [5]  6/25 20/23 31/3 33/12 40/10
briefly [4]  16/7 20/16 24/4 33/11
briefs [6]  6/10 34/24
Broadway [1]  2/3
Business [1]  31/11
busy [1]  36/5

# C

calendar [1]  41/2
call [31]  5/8 5/22 6/24 7/21 8/11 10/17 11/21 13/12 13/13 13/14 14/4 14/9 14/11 14/19 16/25 21/15 29/16 29/23 34/7 34/22 36/1 36/12 36/25 37/1 37/4 38/17 41/9 43/10 43/19 44/5 44/16
can't [6]  19/13 33/23 34/14 34/16 43/13 46/3
cannot [4]  10/8 14/6 17/18 22/13
cap [2]  5/18 6/2
caps [6]  5/14 9/1 16/13 16/18 16/21 26/15
card [3]  17/2 17/3 17/4
care [4]  27/17 31/9 37/2 46/4
case [32]  3/6 7/4 9/2 9/3 9/4 9/8 9/15 9/16 10/11 10/22 11/3 11/3 11/6 11/9

11/11 12/2 14/2 14/14 14/10 15/8 17/22 20/10 27/6 31/16 32/7 36/7 38/10 38/12 38/19 38/25 44/4
cases [9]  4/4 9/7 11/4 11/12 31/7 31/20 33/13 33/15 45/18
Casey [1]  23/11
Casey's [1]  27/4
category [3]  11/16 14/5 14/8
cause [1]  47/6
center [1]  11/16
cert [1]  36/23
certain [3]  5/24 9/19 11/22
certainly [8]  19/9 19/10 24/7 24/19 25/2 27/1 28/24 38/24
certainty [3]  20/11 21/1 23/24
certification [12]  22/25 26/9 28/8 28/11 29/21 30/1 30/8 30/18 36/16 37/21 38/3 41/16
certifications [1]  24/24
certified [1]  47/8
certify [2]  25/14 47/4
challenge [1]  18/21
chambers [1]  3/3
chance [1]  33/18
change [4]  3/17 5/3 5/4 24/18
chaos [1]  26/24
chart [1]  33/23
Chevron [2]  32/1
choose [2]  28/21 46/2
Christmas [1]  44/4
chronology [1]  27/24
Church [1]  11/5
circuit [12]  6/21 7/4 10/15 11/5 11/6 11/7 11/8 11/9 11/10 27/6 36/20 36/23
circuits [1]  11/4
citation [2]  10/17 10/20
cite [1]  16/8
cited [2]  9/23 10/22
cites [1]  10/22
citizen [1]  15/1
citizenship [6]  1/6 3/7 17/3 30/3 30/25 31/22
civil [1]  3/6
claim [2]  7/1 7/3
claims [5]  8/8 8/19 8/22 19/11 45/16
clarify [1]  37/14
class [28]  10/1 15/15 19/11 22/4 22/14 22/17 22/22 22/25 23/2 24/8 25/14 26/9 28/7 28/10 29/18 29/21 30/1 30/8 30/18 32/17 33/5 34/2 36/16 37/21 38/2 38/7 41/16 45/16
clause [1]  16/11
clean [2]  41/12 41/13
clear [10]  5/7 6/16 8/19 9/4 17/6 19/2 19/3 26/13 33/13 43/15 45/15
clearly [5]  3/15 5/3 17/1 21/15 21/16
client [2]  26/13 26/16
clients [1]  21/11
clients' [1]  7/2
close [1]  29/7
closely [1]  18/12
Code [3]  12/17 12/19 13/5
cognizable [2]  8/21 14/16
Columbia [2]  9/16 10/17
combined [1]  7/24
come [6]  14/19 16/15 20/13 25/4 30/5 34/11
come/first [1]  20/13
comes [4]  14/15 18/15 22/6 41/4
coming [4]  6/5 9/25 19/8 19/20

**C**

comment [2]  30/21 43/10
comments [2]  33/2 37/8 38/13 38/18
companies [5]  9/11 10/9 10/10 16/21
17/13
company [8]  8/22 13/12 13/12 13/13
13/14 15/23 17/16 23/16
comparing [1]  12/6
compartmentalize [1]  25/9
compel [1]  35/1
complaint [19]  7/1 7/14 7/18 7/23 7/24
18/24 19/2 19/25 27/2 27/7 27/13
28/11 29/14 29/19 35/13 40/12 41/4
42/11 42/20
complete [1]  26/2
completely [3]  14/7 14/12 26/15
complicated [2]  36/5 45/3
component [1]  30/12
concern [3]  7/13 33/9 33/25
concerned [1]  44/22
concerns [2]  7/13 8/25
conclude [1]  27/2
conclusion [1]  33/11
condition [1]  24/13
conditional [2]  14/24 15/2
conditions [1]  9/24
conduct [2]  33/3 34/5
conducted [3]  4/15 19/17 26/16
confer [3]  34/15 34/16 46/1
conference [4]  1/10 3/3 3/5 35/4
conflict [1]  35/19
conformed [1]  47/7
Congress [4]  12/3 17/1 17/6 17/9
congressional [2]  5/14 31/15
connection [2]  32/2 33/5
consider [3]  22/14 22/20 45/16
consideration [1]  12/21
considerations [2]  14/17 29/4
considered [2]  33/6 38/14
considering [4]  22/22 23/1 37/21 38/9
consistent [1]  7/21
constantly [3]  20/4 20/14 23/25
constitutes [1]  38/12
constitutional [6]  8/19 8/21 11/14 17/20
17/22 18/1
constitutionality [1]  31/9
contact [4]  34/11 34/13 34/17 46/3
contacting [1]  35/3
contains [1]  12/20
contents [1]  7/20
context [1]  10/22
contrary [1]  18/19
convenient [2]  44/21 44/23
conviction [1]  15/3
copy [3]  34/17 39/24 40/2
correct [11]  4/16 6/24 18/17 18/18 21/9
21/24 23/6 24/16 27/1 45/23 47/5
correctly [3]  20/17 31/23 40/5
correlate [1]  28/11
could [7]  15/7 15/17 19/21 20/18 26/12
38/15 38/23
counsel [8]  5/8 6/24 16/8 17/20 18/9
32/23 32/24 44/22
counted [2]  13/6 13/7
country [1]  25/4
counts [1]  27/11
course [6]  8/6 11/21 13/21 25/6 38/5
40/12
court [21]  1/1 1/13 2/24 3/8 9/21 10/16
11/14 31/16 31/20 32/3 32/4 34/7 34/9
44/22 47/10
Court's [3]  31/5 31/8 34/18
courtroom [4]  34/14 34/17 35/3 46/3
courts [3]  17/8 18/5 30/14
covered [1]  7/3
create [7]  12/4 18/25 19/9 19/11 19/21
26/24 26/24
created [2]  6/4 6/6
creates [2]  9/12 24/24
creating [1]  9/1
cross [9]  29/25 32/9 35/17 35/18 35/21
40/10 40/17 41/6 42/2
cross-examinations [1]  35/21
cross-motion [2]  41/6 42/2
cross-motions [6]  29/25 32/9 35/17
35/18 40/10 40/17
CRR [2]  2/24 47/10
cue [1]  28/9
current [9]  19/7 28/7 30/3 30/24 31/4
31/23 32/2 37/15 40/19
currently [2]  7/14 35/20 39/1
cv [2]  1/4 3/7

**D**

D.C [2]  2/6 10/15
date [10]  4/6 4/8 10/12 12/21 22/7 22/9
23/17 26/2 38/19 47/10
dates [1]  24/18
day [2]  4/10 4/22
days [6]  35/12 35/13 36/3 36/4 36/6
43/9
deadline [1]  40/10
deal [6]  29/25 30/7 30/8 30/9 32/9
32/13
debatable [1]  17/7
December [8]  36/1 43/15 43/21 43/23
44/2 44/8 44/11 45/3
December 19th [5]  43/23 44/2 44/8
44/11 45/3
December 19th will [1]  43/21
December 2nd [1]  43/15
decide [5]  22/24 28/16 28/22 29/3 37/4
decided [4]  4/1 12/3 31/19 41/19
deciding [1]  10/5
decision [20]  6/21 9/23 18/7 29/17 31/8
31/10 31/12 31/13 31/14 31/17 35/11
36/2 36/6 36/8 36/12 37/16 37/17
40/24 41/1 41/3
decisions [1]  37/2
declaration [9]  8/4 15/15 23/7 23/7
23/10 23/11 27/4 29/11 39/25
Declaration/Document [1]  23/10
declarations [10]  3/13 7/18 7/20 7/22
7/24 9/10 10/4 18/23 21/4 27/8
declaratory [1]  18/24 27/6
defendant [5]  32/24 34/1 36/19 36/22
40/20
defendants [8]  1/7 2/4 6/11 6/15 6/16
12/10 33/3 38/2
defendants' [2]  3/6 45/20
deference [2]  31/25 32/1
deficiencies [2]  8/18 8/19
deficiency [1]  8/3
definitely [1]  38/9
delivers [1]  5/23
demarcate [1]  17/9
demarcation [1]  18/6
denied [1]  32/6
Dennis [3]  2/24 47/9 47/10
deny [2]  32/6 41/15
Department [1]  2/5
depending [1]  20/8
depends [2]  36/4 36/15
deportation [1]  11/23
deputy [4]  34/14 34/17 35/3 46/3
described [1]  7/4
describing [1]  30/12
designed [1]  9/24
Despite [1]  7/12
didn't [2]  5/2 23/18
difference [3]  3/15 17/25 21/19
different [5]  9/7 11/16 14/5 14/12 22/4
digitally [1]  47/7
directed [1]  41/9
directive [2]  30/5 31/1
directly [1]  16/8
disagreement [1]  34/8
discovery [24]  33/3 33/8 34/1 34/5 34/9
34/9 35/5 37/15 37/17 37/20 38/2 38/8
38/11 39/4 39/7 39/12 39/15 39/16
45/14 45/15 45/17 45/17 45/18 45/20
discuss [4]  8/5 11/14 32/15 34/6
discussed [1]  17/20
dismiss [17]  3/6 3/6 3/12 6/12 8/5
22/12 22/18 22/22 22/23 23/1 25/17
32/6 35/11 37/16 42/12 42/18 42/18
disparity [1]  6/4
disposition [1]  39/23
dispute [5]  32/14 34/12 34/21 35/7 36/5
dissents [1]  31/13
distinction [3]  13/25 16/24 18/8
distinguished [1]  9/8
distribution [2]  12/25 33/19
district [10]  1/1 1/2 1/13 9/16 9/22
10/16 10/16 11/3 32/4 43/1
dive [1]  3/14
do [54]
docket [3]  41/15 41/15 41/18
Document [1]  23/10
documents [1]  26/16
does [21]  8/2 13/18 16/8 17/5 22/16
23/7 26/6 26/13 27/14 30/4 30/9 30/25
32/11 32/14 32/22 35/19 35/19 38/25
39/14 40/3 40/20
doesn't [12]  14/10 18/12 30/4 30/6 31/1
32/11 32/13 37/11 39/13 39/14 40/20
41/23
doing [2]  7/17 32/11
don't [35]  4/25 13/15 15/3 20/4 20/22
21/18 23/4 25/3 25/9 25/24 26/17 27/6
27/7 29/6 30/7 30/8 30/14 30/15 33/4
34/7 35/6 36/10 36/17 38/8 38/20 39/2
39/3 39/3 39/6 39/16 39/18 39/22
42/11 43/11 45/17
done [4]  20/1 30/7 35/20 36/12
dory [1]  19/23
down [6]  13/4 14/15 18/15 22/6 25/5
28/22
draw [1]  14/19
drawing [2]  11/6 14/17
drawn [1]  39/7
drop [1]  5/24
due [4]  40/12 41/4 43/12 43/15
during [3]  4/2 4/3 4/11

**E**

e-mail [3]  34/14 34/17 34/21
each [8]  17/12 18/23 24/25 40/1 42/3
42/5 42/6 46/1

**E**

eager [1]  3/14
earlier [1]  24/12
early [3]  35/23 35/24 44/6
earning [1]  15/8
easily [1]  21/7
easy [2]  28/17 31/6
EB [1]  15/1
EB-5 [1]  15/1
effect [1]  5/4
efficient [1]  40/9
efficiently [5]  35/9 36/15 36/25 37/1
37/2
either [7]  15/13 20/9 22/9 26/7 34/9
41/24 45/25
eleventh [3]  11/8 11/9 19/14
eligible [1]  29/10
eliminated [1]  20/6
eliminating [1]  17/10
else [7]  26/3 27/23 27/25 32/23 34/10
45/4 45/8
employed [2]  30/3 30/25
employee [6]  13/22 22/21 27/19 29/3
40/14 43/9
employee-plaintiffs [4]  22/21 27/19
29/3 40/14
employees [3]  13/25 20/7 21/12
employer [18]  12/12 13/9 13/10 13/20
13/21 14/9 16/5 17/18 18/14 18/21
21/11 22/19 25/18 27/10 27/20 28/18
28/25 32/8
employer-clients [1]  21/11
employer-plaintiffs [10]  12/12 16/5
18/14 18/21 22/19 25/18 27/20 28/18
28/25 32/8
employer-plaintiffs' [1]  27/10
employers [6]  13/24 15/18 18/16 20/7
25/3 29/11
employment [2]  25/7 26/1
end [6]  4/3 29/16 35/11 35/24 35/25
36/18
engage [1]  37/17
enough [5]  4/4 4/13 4/25 18/3 33/9
entails [1]  24/1
entire [3]  4/10 4/23 25/6
entitled [5]  20/25 26/5 26/8 26/9 47/6
envelopes [3]  5/23 5/24 5/25
envisioning [1]  42/3
essentially [9]  5/10 6/3 7/22 7/25 18/25
20/25 22/1 24/9 26/23
et [3]  1/3 1/6 3/7
evaluate [1]  30/17
even [20]  8/23 14/24 19/13 21/9 21/19
21/22 23/24 25/12 26/5 26/21 29/6
31/15 32/7 33/15 36/13 36/18 40/10
43/11 44/19 44/23
event [1]  36/6
eventually [2]  20/12 26/1
ever [1]  4/24
everyone [4]  3/11 19/10 42/22 43/4
everything [3]  19/22 26/3 46/5
evidence [1]  26/16
exacerbating [1]  25/7
examinations [1]  35/21
example [3]  5/20 14/9 28/13
exceed [1]  5/13
exhausted [2]  19/13 19/16
exhibits [1]  3/24
exist [3]  16/13 16/14 17/5
existing [1]  22/15

expecting [1]  36/11
expense [1]  15/14
explain [1]  3/15
explained [1]  5/12
explanation [3]  3/19 5/1 34/20
extend [1]  14/21
extent [2]  6/11 39/20
extremely [1]  17/7

**F**

fact [3]  17/22 21/14 39/3
facts [1]  39/7
factual [1]  7/14
fair [1]  43/16
fairly [1]  9/4
faith [1]  7/21
fall [4]  5/24 5/25 9/5 20/9
familiar [1]  10/11
family [1]  44/4
far [2]  14/2 44/22
farther [1]  11/24
fashion [1]  34/23
fault [1]  5/2
favor [1]  36/18
FCRR [2]  2/24 47/10
February [2]  31/19 36/8
February 25th [1]  31/19
Federation [1]  31/10
feel [4]  17/21 19/18 33/11 38/20
fell [1]  9/18
few [5]  13/4 19/7 19/25 31/7 34/4
figure [3]  22/15 27/19 35/12
file [17]  12/22 13/12 22/6 29/18 34/24
34/24 35/13 35/23 37/5 38/19 40/17
40/23 41/5 42/2 42/4 42/11 42/17
filed [14]  3/13 4/2 4/9 14/6 18/23 23/16
24/7 24/11 35/2 35/21 39/24 41/8
42/13 42/20
filers [1]  12/23
files [1]  12/21
filing [5]  4/18 4/22 12/21 40/2 42/22
fill [1]  16/17
final [1]  36/15
finally [1]  30/21
fine [14]  10/19 25/14 34/7 34/23 37/10
37/22 37/23 38/20 41/10 42/16 43/10
44/9 45/24 46/2
finite [1]  11/19 11/21 17/5
first [20]  3/25 4/7 8/11 12/16 12/22
12/22 16/9 16/11 20/13 22/12 22/14
22/24 22/25 30/5 30/5 32/5 34/4 34/6
34/15 35/9
fiscal [15]  4/2 4/3 4/5 4/17 4/23 19/6
19/14 20/3 21/12 25/24 26/23 27/1
29/1 33/18 33/19
fish [5]  31/17 31/18 31/18 31/18 31/18
Fisher's [1]  6/21
fit [1]  36/16
five [1]  4/22
five-day [1]  4/22
fixable [2]  21/7 21/10
fly [1]  44/20
focuses [1]  16/9
following [1]  43/7
force [1]  18/25
foregoing [1]  47/4
foreign [1]  9/25
forget [1]  36/17
forgotten [1]  28/7
formed [1]  19/21

forms [1]  26/3
forward [9]  20/3 21/20 25/23 27/25
28/1 29/19 30/10 32/7 35/15
four [5]  3/13 7/18 7/20 7/22 7/24
frankly [2]  35/22 36/3
free [1]  34/13
freely [1]  15/18
Friday [4]  10/13 29/17 43/15 43/24
front [1]  11/15
fully [1]  41/19
fundamental [1]  21/3
further [6]  6/11 28/2 29/8 37/8 37/13
40/6
future [1]  19/4

**G**

generally [1]  43/20
genuine [1]  7/13
get [38]  5/18 7/23 10/10 12/22 13/10
13/15 14/11 15/21 17/8 20/9 20/23
23/24 23/24 25/13 25/15 25/15 25/25
26/1 28/22 29/11 29/12 29/15 29/17
31/3 34/21 35/2 35/10 35/14 36/6 38/7
39/8 40/12 41/2 41/3 41/16 41/17
44/16 46/5
gets [1]  10/5
getting [5]  22/9 24/23 36/7 42/19 44/17
give [12]  23/3 27/21 29/18 31/4 34/24
36/2 40/25 43/15 43/20 44/3 44/18
44/19
given [7]  4/10 5/11 14/25 19/5 19/13
38/18 42/12
giving [2]  19/15 30/23
glad [1]  46/4
go [11]  12/10 13/13 13/16 16/1 22/24
22/25 25/11 26/7 27/24 31/14 37/8
goes [2]  8/4 11/15
goes front [1]  11/15
going [26]  7/23 18/10 19/9 20/3 21/5
21/20 25/23 27/4 27/15 27/21 28/1
28/18 28/20 28/24 30/10 32/7 33/6
33/22 35/15 36/19 39/13 39/15 39/17
40/15 41/17 45/19
gone [1]  33/16
good [6]  3/11 7/9 7/21 8/17 14/18
41/25
got [1]  4/20
governed [1]  39/20
government [9]  33/7 33/12 39/9 39/12
39/14 41/23 42/1 43/8 44/9
Government's [1]  41/11
grant [2]  27/13 28/9
great [1]  15/13
greater [1]  4/22
greatly [1]  19/18
green [3]  17/1 17/3 17/4
grievances [1]  25/19
grossly [1]  5/20
guess [2]  6/2 10/5
guts [2]  30/1 30/6
Guzman [2]  6/22 7/4

**H**

H-1B [14]  11/19 12/3 13/8 13/10 13/11
13/11 13/14 14/6 14/6 14/13 14/19
15/6 15/17 19/7
H-2A [6]  10/22 14/3 14/4 14/4 14/7
14/10
H-2B [3]  14/4 14/7 14/10
had [3]  17/23 17/24 21/19

## H

hadn't [1]  4/3
half [1]  40/13
handled [1]  3/16
happens [2]  26/14 34/11
hard [2]  37/19 44/17
harm [1]  22/3
has [17]  4/23 5/21 7/25 13/6 15/16
  17/9 17/20 18/23 24/9 24/14 24/19
  26/16 31/13 33/7 33/12 37/10 42/13
have [93]
haven't [1]  41/18
having [6]  4/13 22/8 24/11 33/18 37/19
  42/10
he [4]  16/10 23/12 23/13 42/13
hear [3]  3/14 19/25 34/11
heard [2]  32/22 38/22
hearing [4]  25/10 25/19 30/13 40/5
held [1]  9/21
help [5]  5/8 17/12 17/15 39/3 46/4
helpful [1]  10/18
her [1]  34/18
here [24]  3/10 9/6 9/9 9/12 9/25 10/1
  11/19 11/19 11/20 12/16 13/24 16/15
  17/1 17/14 17/5 17/9 19/8 30/2 31/2
  34/16 40/12 41/2 44/15 44/16
herself [1]  16/17
highly [1]  33/22
him [2]  12/11 16/17
hire [4]  20/6 20/7 20/9 20/12
his [2]  3/18 15/9
Hispanic [2]  9/21 14/2
Hispanics [2]  10/11 18/7
history [1]  5/1
hit [2]  4/19 5/18
holding [1]  37/15
holiday [2]  43/5 43/25
Honor [47]  3/4 3/21 5/9 5/22 6/8 6/18
  6/19 7/11 8/1 8/10 11/12 12/14 14/6
  16/25 18/6 18/25 19/9 19/19 20/18
  21/14 21/25 24/4 24/17 27/16 28/3
  28/5 28/6 33/1 37/10 37/14 38/1 38/5
  38/13 39/6 39/22 40/22 41/7 41/21
  41/24 42/25 43/8 43/17 43/18 44/10
  44/13 45/11 46/7
Honor's [2]  28/9 38/18
HONORABLE [1]  1/12
hopefully [1]  32/20
hour [1]  19/14
how [21]  3/16 5/5 5/6 6/10 10/17 23
  19/16 19/17 20/2 22/12 23/5 27/24
  31/5 31/14 35/18 36/5 36/5 36/16 39/3
  39/3 43/15 43/23
however [1]  8/2
hundreds [1]  33/24
hunky [1]  19/23
hunky-dory [1]  19/23
hurdle [1]  26/6

## I

I'll [16]  22/20 28/16 29/15 29/17 29/22
  30/22 32/23 34/4 34/24 35/7 36/25
  37/1 39/15 40/8 40/25 44/19
I'm [29]  6/24 7/17 7/23 10/10 20/2
  20/22 21/7 22/12 22/2 23/4 23/5
  24/17 25/10 25/19 27/21 28/6 28/18
  28/20 28/24 30/13 33/24 34/16 37/19
  38/23 39/15 40/5 42/3 44/12 44/22
I've [1]  3/12
i.e [2]  5/18 38/16

## III

imagine [1]  5/22
immediately [1]  5/5
immigrant [24]  8/20 9/2 9/4 9/6 9/17
  9/18 10/1 11/13 11/16 11/18 11/20
  11/23 12/4 14/5 14/17 14/18 14/22
  15/1 16/14 16/24 16/24 17/4 17/17
  25/3
immigrants [1]  17/1
IMMIGRATION [5]  1/6 3/8 30/4 30/25
  31/22
implementing [1]  30/16
implied [1]  21/9
important [3]  11/17 12/16 13/25
impossible [1]  30/14
INA [3]  9/20 9/24 10/2
INC [3]  1/3 3/7 23/14
incentivize [1]  25/3
inclination [1]  18/2
include [1]  40/14
included [2]  7/14 40/2
including [3]  9/16 15/12 15/16
inconsistent [1]  31/24
inconvenienced [1]  18/2
incorrectly [1]  33/16
increased [1]  4/11
Independent [1]  31/10
individual [25]  8/7 8/18 9/3 9/9 11/2
  11/11 11/18 11/25 12/1 12/10 12/24
  13/2 13/9 15/5 15/22 16/20 17/14
  17/16 17/24 18/11 32/17 32/17 38/5
  39/12 40/14
individuals [1]  15/24 16/3
information [1]  26/3
initial [1]  29/22
injunction [1]  37/5
injunctive [5]  18/24 27/5 36/14 36/15
  36/19
injuries [1]  26/22
injury [6]  14/16 15/14 15/20 17/21
  17/22 19/4
insignificant [1]  15/11
instance [1]  34/6
instead [2]  4/5 9/5
instructed [1]  6/19
intend [4]  21/11 28/12 29/1 29/12
intended [2]  10/7 14/6
intention [2]  23/21 27/10
interest [23]  8/8 8/11 8/16 8/23 9/5
  9/19 10/25 11/2 11/10 12/9 12/11
  12/15 16/3 16/4 16/7 17/25 18/4 18/11
  18/13 18/17 29/5 29/7 40/8
interested [1]  45/15
interpret [4]  31/5 31/23 32/2 35/18
interpretation [3]  38/19 38/25 40/3
interpreting [3]  31/6 31/15 31/25
interrupt [1]  7/16
intervene [1]  46/4
intervention [1]  34/8
investors [1]  15/1
invited [1]  6/15
involved [1]  17/8
involving [1]  14/3
is [183]
isn't [4]  13/6 20/21 21/15 31/6
issuance [1]  19/19
issue [13]  4/12 12/16 18/10 30/1 30/6
  33/7 36/16 37/1 38/7 39/19 45/7 45/17
  45/21
issued [3]  10/12 10/13 37/17

## III

issued [19]  2/10 13/6 32/18 35/5 36/9
  37/3 38/3 40/18 40/18 42/3 45/7
it [122]
it's [1]  5/2
its [3]  4/1 6/19 42/2
itself [1]  9/12

## J

January [2]  36/8 44/6
job [1]  13/22
jobs [1]  9/13
Johnson [1]  11/4
Joshua [1]  2/4
JUDGE [3]  1/13 3/10 6/21
Judge Simon [1]  3/10
judgment [20]  3/24 22/24 28/8 28/10
  29/20 29/25 32/9 35/17 35/21 40/11
  40/17 41/6 41/8 41/15 42/2 42/4 42/14
  42/23 43/2 45/22
jurisdiction [1]  25/17
just [33]  4/4 4/4 4/20 5/3 11/1 12/9 13/4
  14/2 14/5 14/15 14/25 15/14 15/20
  18/2 20/1 20/16 22/11 24/12 25/16
  25/20 26/22 27/2 30/13 31/7 31/21
  32/7 32/12 33/6 33/11 34/24 38/11
  39/8 41/13
Justice [2]  2/5 31/17
justiciability [1]  8/12

## K

Kagan [1]  31/17
keep [5]  17/13 25/5 41/12 41/13 42/19
keeps [1]  10/23
Khalid [1]  11/3
kind [2]  33/7 40/4
know [18]  4/25 5/2 5/3 7/20 12/18
  13/24 20/1 25/25 27/20 31/6 33/4
  34/18 35/6 36/9 38/4 38/6 39/20 40/13
knowing [2]  20/12
knowledge [1]  20/8
Kurapati [1]  11/6

## L

labor [1]  24/13
lack [1]  25/17
language [3]  8/3 16/19 17/14
last [5]  9/17 10/13 21/5 31/15 33/6
later [8]  12/23 20/10 20/11 22/6 29/24
  32/18 36/3 41/3
latter [1]  34/3
law [8]  7/4 9/2 9/4 9/15 9/16 10/22
  17/22 27/6
laws [1]  11/22
lawsuit [1]  23/15
LBR [1]  12/2
LBRs [1]  11/20
least [14]  5/12 17/23 20/8 20/21 21/8
  25/22 26/6 30/15 37/6 37/20 41/17
  43/20 45/20 45/21
leave [12]  7/19 11/21 15/13 27/13
  27/21 28/9 28/19 32/12 34/24 35/2
  35/3 39/15
legal [2]  40/15 42/19
legally [1]  20/25
length [1]  14/14
less [14]  4/18 19/6 25/4 35/12
let [12]  7/16 12/8 20/1 20/16 22/11
  34/18 35/6 37/7 37/23 41/2 41/19
  43/14
let's [12]  4/8 7/9 8/16 11/1 13/10 16/1

**L**

let's... [6]  18/20 24/2 41/4 43/19 45/2
45/4
Leung [1]  15/16
liability [9]  35/17 36/9 37/20 40/11
40/18 40/18 42/3 42/5 45/22
lift [1]  37/22
light [1]  33/4
like [24]  6/11 6/14 6/22 11/22 14/6
15/14 27/14 37/18 38/13 38/13 38/18
38/20 39/9 39/11 39/17 39/17 40/22
41/13 41/13 42/18 43/14 43/20 45/8
45/19
likely [1]  33/22
limitations [4]  6/20 6/23 7/13 16/12
limited [2]  13/1 33/14
line [16]  5/16 9/22 10/23 13/4 14/17
14/18 15/6 15/19 19/1 19/1 19/9 19/21
19/22 20/9 23/24 26/25
lines [1]  38/8
list [1]  14/9
listed [1]  14/6
listing [1]  14/8
literally [2]  5/24 26/14
little [1]  37/6
lodged [1]  39/21
lodging [1]  40/6
logical [1]  32/20
long [4]  9/6 11/13 11/23 21/19
long-term [1]  9/6 11/13 11/23
longer [1]  15/3
look [9]  8/25 9/2 9/10 9/17 12/16 18/22
29/8 31/24 43/19
looked [1]  42/14
looking [3]  18/5 25/1 43/23
lose [2]  13/15 36/20
loses [1]  36/11
losing [1]  15/19
lost [4]  13/16 15/5 15/7 15/16
lot [5]  9/15 17/19 20/23 20/23 21/18
lotteries [2]  4/15 26/15
lottery [18]  4/20 6/3 6/6 13/2 13/19
15/16 15/21 19/7 19/17 20/5 20/5
20/15 21/20 22/10 24/1 25/25 33/10
33/22
luck [1]  6/2
lucky [1]  15/21
Lynch [1]  6/22

**M**

made [1]  25/20
mail [3]  34/14 34/17 34/21
mailroom [1]  5/21
main [1]  32/10
make [9]  8/2 8/5 10/24 16/16 31/2
31/21 32/1 34/12 45/15
makes [1]  21/18
making [3]  18/5 18/19 19/11
manner [1]  41/9
Mantena [1]  11/4
many [3]  9/23 15/7 15/14
map [1]  27/24
Mary [2]  34/14 45/4
Mary Austad [1]  34/14
matter [3]  22/16 25/17 40/15
may [24]  6/16 7/17 10/2 18/2 18/3 20/4
20/5 20/14 20/14 22/17 22/17 23/7
23/7 25/10 25/11 25/11 25/11 25/11
25/13 25/20 28/21 28/22 35/1 45/3
maybe [15]  3/17 21/21 25/9 26/4 26/8

me [30]  3/15 3/18 4/16 5/8 6/24 7/16
12/8 20/1 20/16 22/11 22/18 23/4
25/20 28/16 29/23 31/3 31/4 33/13
34/24 35/4 35/6 36/6 36/7 37/7 37/22 37/23
41/2 41/10 42/16 43/14 46/2
means [3]  34/11 35/6 40/18
members [5]  15/15 22/4 22/14 22/17
22/22
members' [2]  23/2 24/8
mentioned [1]  14/2
merits [4]  20/22 20/23 25/12 26/5
methodology [1]  31/5
MICHAEL [1]  1/12
mid [2]  35/10 35/25
mid-November [1]  35/25
mid-September [1]  35/10
might [7]  12/1 16/16 22/4 24/4 26/4
42/1 41/11
minimum [1]  28/18
minute [2]  45/7 46/5
minutes [2]  19/25 34/4
missed [1]  4/19
missing [3]  11/11 26/11 38/23
mistake [1]  20/22
Monday [8]  43/7 43/11 43/14 44/2 44/5
44/11 44/20 45/3
money [2]  9/11 9/12
month [1]  19/6
mootness [1]  18/16
more [16]  4/9 9/9 10/18 13/3 13/4
14/20 14/24 18/11 20/23 20/24 22/9
24/9 31/7 34/23 38/4 38/6
morning [4]  44/15 44/18 44/19 44/25
most [2]  32/2 44/21
motion [31]  3/5 3/6 3/12 3/24 6/12 6/13
6/17 8/5 19/3 22/12 22/18 22/21 22/23
23/1 25/16 28/7 28/16 32/6 33/4 33/5
35/11 37/5 37/16 41/6 41/8 41/14
41/16 42/2 42/4 42/12 42/13
motions [14]  28/10 29/25 32/9 35/1
35/17 35/18 39/8 39/24 40/10 40/17
41/18 42/17 42/18 42/22
move [9]  7/9 14/11 15/18 16/4 24/2
29/19 32/24 36/14 36/25
moving [2]  40/9 42/19
Mr [2]  24/19 42/1
Mr. [46]  3/17 3/18 3/20 4/16 5/8 5/9
5/12 5/16 6/13 7/6 7/6 12/13 15/8 16/1
19/24 20/1 20/16 20/21 21/2 21/11
22/3 23/17 23/20 24/22 25/8 27/9 28/2
28/4 28/8 30/13 32/25 34/4 35/10
36/17 37/3 37/7 37/8 37/13 38/22 39/5
41/20 41/25 42/9 42/12 44/24 45/10
45/13
Mr. Press [18]  3/18 4/16 5/8 5/9 16/1
19/24 20/21 21/2 23/20 24/22 25/8
28/2 30/13 34/4 37/7 41/25 42/9 45/13
Mr. Renison [25]  3/17 3/20 5/12 5/16
6/13 7/6 12/13 20/1 20/16 21/11 23/3
27/9 28/4 28/8 32/25 35/10 36/17 37/3
37/8 37/13 38/22 39/5 41/20 44/24
45/10
Mr. Renison's [1]  42/12
Mr. Sinienok [2]  15/8 23/17
Ms [1]  15/12
Ms. [1]  15/16
Ms. Leung [1]  15/16
much [6]  6/9 10/23 11/24 25/9 37/3

muddy [2]  17/8 18/8
must [1]  15/13
my [18]  5/2 6/13 7/5 26/13 26/16 29/22
29/24 32/5 32/8 32/21 33/25 34/5
34/13 34/17 36/12 40/3 41/2 46/3
myself [2]  43/20 44/3

**N**

name [1]  3/9
named [5]  15/9 22/15 22/19 22/21
39/12
namely [2]  25/23 35/18
narrow [1]  45/16
National [1]  31/10
necessarily [1]  5/16
necessary [1]  39/23
need [20]  13/16 13/21 13/22 13/23
26/21 27/13 27/19 27/25 29/2 30/7
30/8 30/9 34/7 34/18 38/20 39/2 40/6
40/24 45/4 45/25
needed [1]  37/20
needing [1]  45/20
needs [2]  26/1 39/21
neglects [1]  16/10
never [2]  21/5 38/7
new [7]  14/11 19/21 19/22 21/17 21/19
28/11 44/4
newly [1]  22/2
next [7]  4/5 22/23 29/16 29/21 35/11
36/8 37/24
Ninth [5]  6/21 7/4 27/6 36/20 36/23
Ninth Circuit [4]  6/21 7/4 36/20 36/23
no [16]  4/7 4/8 15/3 16/23 19/11 22/18
28/5 33/2 35/1 36/2 40/6 41/3 41/21
43/10 45/11 45/18
No. [1]  23/10
No. 22 [1]  23/10
nobody [1]  20/22
non [16]  8/20 9/2 9/4 9/17 9/18 10/1
10/6 11/18 12/4 14/5 14/18 16/14
16/24 17/4 17/17 25/3
non-immigrant [15]  8/20 9/2 9/4 9/17
9/18 10/1 11/18 12/4 14/5 14/18 16/14
16/24 17/4 17/17 25/3
non-prudential [1]  10/6
none [1]  9/25
normal [1]  38/11
normally [3]  5/13 43/1 45/18
not [81]
note [2]  8/2 17/25
noted [1]  18/6
nothing [2]  10/4 13/15
notice [1]  40/2
notices [1]  33/20
November [6]  35/25 35/25 35/25 43/3
43/12 43/13
November 11th [1]  43/3
November 14th [1]  43/12
November 28th [1]  43/13
now [41]  4/25 5/22 6/2 6/11 7/20 12/2
14/14 16/23 17/8 17/19 19/5 19/14
19/19 22/25 23/22 24/17 25/16 26/22
26/25 27/1 27/24 27/25 28/17 28/20
28/22 29/22 29/24 30/22 32/12 34/15
35/10 36/9 37/23 38/10 38/12 39/15
39/16 40/8 40/16 40/21 41/17
number [10]  4/13 4/20 4/21 4/22 13/8
13/14 13/15 13/16 15/17 17/12
numbers [2]  4/12 4/13 4/18 19/13

**N**

numbers... [5]  19/16 33/14 33/17 33/19
33/24
numerical [2]  12/20 16/12
numerically [1]  33/14

**O**

object [2]  31/18 41/23
objection [1]  41/20
obviously [6]  7/19 31/6 32/3 36/11
36/22 44/15
October [4]  35/23 35/24 42/21 42/23
October 21st [2]  42/21 42/23
off [1]  44/3
offered [1]  15/9
Official [1]  47/10
okay [13]  6/9 7/8 8/15 18/22 20/20
27/12 27/17 39/11 40/25 42/15 45/2
45/6 45/24
old [2]  24/20 26/24
old-wage [1]  24/20
once [6]  5/17 5/18 6/5 19/21 27/14
33/15
one [19]  7/17 9/17 13/3 15/6 15/8
15/19 20/2 21/17 21/19 22/9 23/22
24/10 25/22 31/17 32/19 33/23 37/4
40/8 40/25
One Fish [1]  31/17
ones [2]  17/19 26/21
online [3]  19/8 19/20 25/25
only [13]  4/21 22/3 26/4 30/11 31/25
33/25 35/18 36/9 37/14 38/2 40/24
45/14 45/15
oOo [1]  47/2
open [2]  38/24 41/2
operated [1]  39/1
opine [1]  20/22
opportunity [5]  15/6 22/2 22/8 23/3
23/24
oppose [2]  39/13 39/18
opposed [3]  20/13 23/25 44/12
opposing [3]  17/19 18/8 44/21
opposition [1]  19/3
option [2]  23/15 27/3
oral [10]  3/5 36/1 36/3 36/4 42/7 43/20
44/1 44/5 44/11 45/2
oranges [1]  12/5
order [18]  5/19 5/22 6/19 12/21 17/9
22/7 30/14 30/16 32/20 33/6 34/9 34/9
36/19 37/15 37/23 39/16 45/7 46/5
orderly [2]  12/25 33/18
OREGON [3]  1/2 1/6 2/3
organization [1]  16/17
organizational [5]  8/9 26/21 38/4 38/17
40/1
original [1]  47/6
originally [2]  17/23 17/24
other [22]  5/5 5/25 7/10 9/2 11/4 12/17
12/25 15/15 24/8 26/7 26/8 27/24
27/25 28/19 30/21 31/20 33/2 33/15
34/17 39/25 46/1 46/1
other class [1]  15/15
otherwise [1]  30/19
our [23]  5/10 6/22 6/23 6/24 6/25 7/12
8/5 9/23 10/23 10/24 11/15 13/16
16/13 17/21 19/3 29/17 33/9 33/13
33/20 34/22 41/7 41/13 41/18
out [16]  4/19 6/2 9/2 9/15 12/20 22/15
23/4 27/19 27/24 35/5 39/7 44/15
44/16 44/17 44/20 46/5

outside [2]  10/7 45/17
over [8]  13/13 15/10 16/15 19/8 19/21
22/6 30/22 32/14

**P**

p.m [1]  45/3
P.O [1]  2/5
page [2]  23/13
paragraph [4]  16/11 16/12 23/14 27/4
Parrilli [1]  2/2
part [4]  21/20 23/23 28/17 39/25
partial [10]  35/17 35/20 40/11 40/17
41/6 42/2 42/4 42/18 42/22 45/21
participations [1]  23/25
particular [5]  20/7 25/13 26/20 30/11
33/2
parties [3]  31/2 34/5 37/16
pass [1]  17/3
past [2]  19/12 24/8
Patel [1]  11/9
path [1]  17/5
Patient [1]  31/9
pay [1]  25/4
pending [3]  22/12 28/16 41/18
Pentecostal [1]  11/5
Pentecostal's [1]  18/7
people [6]  4/18 4/19 9/6 15/12 20/9
20/12
Per [2]  23/11 27/4
Perez [3]  6/22 7/4 9/22
Perez-Guzman [1]  7/4
Perez-Guzman v [1]  6/22
perhaps [2]  4/2 33/3
period [9]  4/10 4/11 11/20 11/21 15/4
15/10 16/15 17/5 34/10
permanent [5]  9/7 11/13 11/24 14/25
15/3
permission [1]  29/11
person [3]  14/10 14/11 44/12
perspective [3]  40/3 41/7 45/20
petition [14]  8/22 13/13 13/21 14/22
17/12 17/15 21/17 22/2 22/3 23/16
26/2 36/21 36/23 36/23
petitioners [2]  4/13 13/24
petitioning [3]  10/9 16/21 17/13
petitions [11]  3/16 4/2 4/9 4/21 4/23
13/10 22/5 23/21 24/6 24/8 33/24
phone [2]  35/14 44/12
phrase [1]  5/2
place [3]  15/19 19/1 20/13
plaintiff [9]  7/25 12/8 29/18 32/24 36/10
36/11 36/12 36/12 45/9
plaintiffs [58]
plaintiffs' [6]  6/24 16/8 25/22 27/10
29/20 41/14
plan [1]  28/1
planning [1]  7/17
pleaded [2]  17/24 17/24
pleading [1]  40/24
please [3]  3/9 23/9 33/21
pled [3]  7/25 23/21 24/3
plenty [1]  31/13
plus [3]  7/24 32/16 32/17
point [9]  4/9 17/7 17/7 19/16 24/2
24/14 30/18 34/3 35/9
policy [1]  17/7
portion [1]  32/6
Portland [4]  1/6 2/3 2/25 44/22
position [2]  30/17 42/13

possible [2]  25/17 29/13 23/2 29/13
possible [4]  15/2 23/2 30/14 39/9
postal [1]  5/23
posture [1]  38/10
potentially [1]  15/7
practice [2]  34/5 40/19
precedence [1]  22/6
preclude [1]  28/20
prefer [5]  8/12 8/13 8/14 21/22 44/8
preference [2]  37/18 44/24
preferences [1]  44/18
preferrable [1]  45/1
prejudice [2]  41/14 41/15
preliminary [2]  36/14 37/5
premature [1]  37/6
prepared [5]  15/21 22/3 41/8 41/9 42/2
present [2]  3/9 37/11
president [2]  23/12 23/13
Press [20]  2/4 3/18 4/16 5/8 5/9 16/1
19/24 20/21 21/2 23/20 24/22 25/8
28/2 30/13 34/4 37/7 41/25 42/1 42/9
45/13
pressure [2]  5/13 23/5
pretty [3]  5/25 21/7 21/9
prevailing [6]  24/16 24/18 24/24 25/1
25/2 25/5
prior [5]  5/5 5/10 22/5 35/2 35/2
priority [2]  4/6 22/8 23/17
probably [10]  29/2 29/9 29/24 32/9
34/17 34/19 34/20 35/4 35/11 43/21
problem [10]  5/18 9/12 10/5 21/3 21/23
24/8 24/10 24/13 24/24 39/18
problems [1]  37/11
procedural [1]  7/3
procedurally [1]  27/12
procedure [1]  38/11
procedures [2]  30/3 30/24
proceed [5]  8/11 28/15 29/20 38/11
38/17
proceedings [2]  1/11 47/5
process [8]  5/15 5/17 5/21 6/3 11/25
17/18 19/21 20/6
processed [2]  5/5 5/6
Project [3]  9/21 10/11 18/7
prong [1]  26/10
propose [1]  41/5
proposed [2]  8/3 24/19
proposing [1]  25/21
prospective [4]  30/11 30/20 32/16
32/16
prospectively [2]  20/3 25/23
protect [6]  9/24 13/19 16/14 16/20
16/20 16/21
protected [1]  9/19
protection [2]  10/2 31/9
protects [7]  12/24 13/1 13/2 13/19
13/20 15/22 15/22
provide [1]  10/17
provided [1]  39/24
provision [4]  4/14 13/4 13/5
provisions [4]  9/19 10/2 10/8 14/21
prudential [5]  10/6 10/6 14/17 29/4 29/7
punitive [1]  19/11
purely [3]  19/12 30/20 39/8
purposes [3]  22/13 22/21 23/1
pursue [2]  8/8 8/21
pursuing [4]  7/1 8/18 12/2 45/15
put [6]  5/21 17/19 29/10 29/13 35/14
40/16
putative [5]  22/14 22/17 22/22 23/2

**P**

putative... [1] 24/8
putting [2] 23/5 38/14

**Q**

question [15] 5/3 22/18 29/15 30/2 30/8
30/24 31/22 32/1 32/10 32/10 32/13
32/19 40/15 40/19 42/19
Question No [1] 22/18
questions [3] 35/18 40/11 45/22
quickly [3] 35/8 36/15 41/10
quite [3] 9/3 18/22 21/8

**R**

raised [1] 37/3
randomized [1] 6/3
rather [8] 7/3 8/8 8/22 17/14 20/10
20/11 21/1 24/11
RDR [2] 2/24 47/10
reach [1] 35/6 46/1 46/3
reaction [1] 29/24
read [6] 3/11 3/13 6/10 11/2 19/24
36/10
reading [3] 6/25 20/2 33/14
ready [2] 16/4 20/22
real [3] 16/23 18/8 30/1
realistically [1] 37/4
really [15] 5/3 12/5 13/18 14/12 14/15
18/12 19/6 22/5 22/6 29/5 30/19 31/3
38/23 40/3 40/15
reason [4] 11/17 16/13 16/18 16/18
reasonable [2] 32/20 42/8
reasonably [1] 36/25
rebuttal [1] 16/2
recall [2] 23/18 23/19
receive [1] 26/14
received [4] 4/3 5/19 33/20 40/12
recent [4] 6/21 9/16 18/7 31/7
Recess [1] 46/8
recession [1] 4/19
record [11] 38/12 38/12 38/16 38/20
39/2 39/19 39/21 39/23 40/4 40/7 47/5
records [2] 17/13 41/13
Red [1] 31/18
redress [1] 22/3
redressability [4] 8/4 18/15 26/6 26/10
redressable [3] 20/21 25/19 25/20
refers [1] 16/12
refiled [1] 4/20
regard [2] 14/14 33/13
regarding [6] 6/20 6/23 7/13 8/17 10/24
17/11
regulation [3] 3/22 3/23 3/25 4/1 5/4
5/6 38/15
regulations [6] 3/23 5/1 5/10 6/7 25/2
31/23
regulatory [1] 10/7
reject [1] 4/1
rejected [1] 21/17
rejection [1] 40/2
related [1] 35/1
relates [1] 37/4
relatively [5] 29/3 34/20 35/8 35/9
41/10
relevant [4] 12/17 13/3 39/4 40/20
relief [24] 10/3 18/24 19/5 19/12 19/15
20/17 20/20 20/25 21/16 21/21 23/23
24/3 25/13 25/23 26/4 26/8 27/6 28/20
28/21 30/20 36/13 36/14 36/15 36/19
remainder [1] 16/19

**remedy [5]** 30/9 30/10 32/12 32/16
33/13
remove [1] 15/2
Renison [28] 2/2 2/3 3/17 3/20 5/12
5/16 6/13 7/6 12/13 20/1 20/16 21/11
22/3 24/19 27/9 28/4 28/8 32/25 35/10
36/17 37/3 37/8 37/13 38/22 39/5
41/20 44/24 45/10
Renison's [1] 42/12
repeated [1] 23/25
replead [4] 7/19 27/22 28/19 28/25
repleading [1] 29/10
replies [2] 35/25 43/15
reply [9] 3/12 8/6 9/23 10/23 10/24
11/15 16/2 42/7 43/13
reporter [3] 2/24 3/8 47/10
represent [1] 38/7
representatives [1] 40/1
reproduced [1] 3/24
request [6] 18/24 23/15 28/10 33/3
34/1 39/10
requested [7] 20/17 20/20 21/16 22/8
24/3 25/23 26/8
requesting [1] 22/1
required [1] 26/3
resident [2] 14/25 15/4
residents [4] 9/7 11/14 11/24 15/2
resolve [6] 34/15 34/16 34/22 35/7 35/8
45/21
resolved [1] 42/19
respect [23] 8/6 8/23 12/9 12/11 12/15
16/2 16/23 17/11 17/23 24/6 24/7
25/18 25/22 25/22 27/1 28/7 28/17
28/25 29/7 34/3 35/9 38/2 45/14
respond [2] 12/8 42/6
response [1] 3/12
responses [3] 35/24 43/2 43/4 43/12
restrictions [1] 12/20
resubmission [1] 23/8
resubmit [14] 4/5 21/16 21/17 21/22
22/1 23/16 23/21 24/11 26/21 27/3
27/5 27/10 28/12 29/1
resubmitting [1] 22/7
retroactive [1] 30/13
retrospective [1] 32/16
return [1] 15/13
right [38] 3/17 6/10 7/9 7/23 8/21 8/21
12/7 15/25 16/12 17/8 18/20 19/14
19/19 22/25 25/12 25/16 26/19 26/25
27/23 28/15 28/15 28/16 28/20 30/10
30/22 35/14 35/16 36/20 36/21 36/22
37/23 38/10 39/15 39/16 40/16 41/5
41/17 44/24
rights [1] 7/2
risk [6] 20/4 20/14 21/1 22/9 24/1 25/25
RMR [2] 2/24 47/10
road [1] 28/22
rolling [1] 19/22
Room [1] 2/24
rule [4] 3/5 7/21 36/18 42/12
Rule 12 [1] 42/12
ruling [1] 34/12

**S**

S.Ct [2] 31/11 31/19
said [4] 4/4 10/8 32/13 45/25
sailed [1] 24/9
same [3] 10/8 18/4 24/20
satisfied [3] 26/1 26/10 39/10

**satisfy [2]** 25/6 39/6
saw [1] 31/16
say [11] 4/8 6/1 13/10 13/14 13/16
13/22 15/23 28/18 30/23 38/24 42/11
saying [1] 25/9
says [1] 13/5
scenario [2] 20/10 36/7
schedule [6] 35/15 36/7 40/10 40/16
40/21 40/23
scheduled [1] 45/6
scheduling [2] 35/4 37/3
school [1] 15/13
Sebelius [1] 31/11
second [3] 11/5 41/3 42/20
section [2] 12/17 13/18
see [8] 3/18 12/7 30/2 30/16 33/23
37/7 39/3 39/3
seeing [1] 23/19
seek [4] 10/3 19/15 28/21 33/5
seeking [5] 19/5 23/22 23/23 28/21
29/13
seem [3] 11/10 18/12 26/6
seeming [1] 18/9
seems [1] 21/9
seen [3] 11/4 42/10 42/14
sense [2] 5/20 8/2
sent [1] 39/25
September [6] 1/5 3/1 3/13 10/13 35/10
42/21
September 30th [1] 42/21
September 8th [1] 3/13
September 9 [1] 10/13
series [1] 3/23
seriously [4] 17/2 17/7 43/9 43/11
serve [1] 20/13
served [1] 30/5
service [1] 5/23
SERVICES [4] 1/6 3/8 30/4 30/25
Services' [1] 31/23
set [5] 3/4 40/21 40/23 45/2 45/4
sets [1] 12/20
several [1] 4/10
several-day [1] 4/10
shall [2] 37/16 40/16
Shalom [2] 11/5 18/6
share [1] 29/23
she [2] 15/17 15/17
ship [1] 24/9
should [10] 22/5 22/13 27/23 29/10
29/25 31/14 32/9 37/2 40/13 40/20
shouldn't [6] 18/8 25/13 25/14 26/8
26/9 40/14
show [2] 11/10 41/18
SI [2] 1/4 3/7
side [6] 34/18 37/20 39/25 42/4 42/5
42/7
sides [5] 34/7 34/13 40/5 40/6 40/17
signature [3] 47/7 47/7 47/7
signed [1] 47/7
significance [1] 13/8
significant [1] 14/3
signing [1] 47/4
SIMON [2] 1/12 3/10
simplified [1] 14/18
simply [4] 18/22 19/12 33/9 38/16
since [2] 4/24 6/13
Sinienok [2] 15/8 23/17
situation [1] 14/12
six [3] 13/6 14/20 14/22
Sixth [1] 11/10

**S**

so [64]
solid [1] 17/22
solution [1] 8/3
solve [1] 21/23
some [16] 4/19 15/12 22/4 22/16 23/24 30/23 32/6 33/3 33/7 33/11 34/19 38/13 39/20 42/5 42/6 44/4
somebody [1] 30/22
someone [4] 3/15 14/14 18/2 34/8
something [7] 11/11 12/25 26/11 30/23 34/5 34/10 34/15
sometime [1] 35/23
somewhere [1] 23/19
soon [2] 29/3 39/9
sooner [2] 20/10 20/11
sorry [3] 12/18 28/6 43/6
sort [8] 6/4 8/21 10/7 11/15 18/6 24/24 28/11 32/19
sought [1] 29/12
sound [2] 27/14 39/13
sounds [4] 38/18 39/11 39/17 45/19
Southern [2] 9/22 11/3
speak [4] 3/9 23/7 23/8 33/10
specific [2] 13/18 25/21
specifically [9] 6/20 8/7 9/1 9/10 9/15 22/20 24/10 25/18 38/3
spot [1] 16/17
spouse [1] 15/1
stale [2] 24/14 24/23
standing [32] 8/7 8/8 8/16 10/6 11/11 11/15 13/23 16/3 16/5 16/7 17/21 18/1 18/1 18/3 18/11 18/13 18/21 22/13 22/15 22/16 22/17 22/20 26/10 27/5 27/15 27/20 27/21 29/2 29/4 29/5 29/6 29/8
start [4] 8/16 19/20 32/23 45/9
started [3] 4/18 5/18 5/19
state [2] 3/9 31/4
stated [5] 20/18 21/5 21/15 21/16 23/14
STATES [6] 1/1 1/13 9/13 14/15 14/20 31/17
status [2] 12/2 12/22
statute [18] 6/20 6/23 7/3 7/12 12/16 14/1 30/7 31/24 31/24 32/1 32/2 32/11 32/14 32/15 35/19 35/19 39/1 40/20
statutes [4] 25/2 31/5 31/6 31/15
statutory [8] 8/25 10/8 26/15 30/4 31/1 38/19 38/25 40/3
stay [2] 11/1 37/23
step [2] 11/24 22/23
still [4] 8/2 33/5 35/16 37/19
stop [1] 19/19
story [1] 36/18
straight [2] 17/13 36/14
strong [2] 18/12 25/11
stronger [1] 8/24
struggle [1] 31/21
study [1] 18/10
subject [6] 11/22 16/11 20/4 21/20 25/17 25/24
subjected [1] 33/10
submit [8] 17/15 21/5 21/12 21/19 22/2 22/8 26/2 33/21
submitted [6] 21/4 22/5 24/12 24/21 26/17 38/17
substance [1] 7/23
substantive [1] 7/1
successful [1] 30/15

such [3] 9/3 11/18 14/25
sufficiency [1] 7/14
sufficient [1] 4/25
suggest [2] 18/9 40/8
Suite [1] 2/3
summary [20] 3/24 22/24 28/8 28/10 29/20 29/25 32/9 35/17 35/21 40/11 40/17 41/6 41/8 41/14 42/2 42/4 42/13 42/22 43/2 45/21
Sunday [1] 44/16
sunsetting [1] 4/14
supplementing [1] 7/18
support [3] 19/5 23/15 27/3
Supreme [8] 31/4 31/8 31/14 31/16 31/20 32/3 36/21 36/24
sure [8] 3/9 21/8 24/5 24/17 31/2 31/21 32/1 38/21
suspended [1] 34/10
SW [2] 2/3 2/24
system [6] 5/13 9/1 12/3 13/2 13/19 41/18

**T**

tackle [2] 30/1 32/18
take [14] 5/14 7/6 13/14 13/22 17/2 29/8 37/2 38/8 39/12 39/14 39/16 43/9 43/11 43/19
takes [5] 17/1 17/6 27/17 28/8 46/4
taking [2] 5/18 9/13
talk [10] 12/11 16/10 18/20 23/4 27/24 27/25 29/19 34/22 35/22 36/13
talking [2] 12/5 25/16
tangible [1] 31/18
telephone [5] 1/10 3/3 3/5 34/22 35/5
tell [8] 3/18 16/25 20/1 22/11 25/20 28/16 29/22 34/24
telling [1] 31/14
temporarily [1] 4/12
temporary [2] 12/4 12/4
ten [2] 35/12 35/13
tend [2] 32/19 35/8
TENREC [6] 1/3 3/7 23/12 23/13 23/14 24/21
tentative [3] 32/5 32/8 32/21
term [3] 9/6 11/13 11/23
terms [4] 19/16 38/6 38/14 40/23
Texas [1] 9/22 11/3
than [22] 4/10 4/22 7/3 8/8 8/22 11/25 12/25 14/24 17/14 19/6 20/10 20/11 21/1 22/9 24/11 25/4 27/24 27/25 31/7 33/2 36/3 41/3
Thank [15] 3/21 6/9 6/18 7/11 8/15 12/14 15/25 16/6 33/1 41/22 41/25 45/11 45/12 46/6 46/7
Thanksgiving [1] 43/14
that [269]
that's [49]
their [25] 6/11 6/17 7/2 8/8 13/14 13/24 13/25 14/11 15/15 17/13 18/24 19/2 19/3 19/25 23/21 23/21 23/23 25/18 26/1 27/2 29/1 29/11 36/20 39/10 42/4
them [18] 4/6 5/14 5/15 5/17 5/21 13/13 13/14 13/23 14/21 14/23 19/23 25/4 26/14 26/22 38/6 39/15 39/16 43/11
themselves [1] 8/22
then [43] 3/18 4/14 4/17 4/21 8/11 12/8 12/10 13/11 16/3 18/20 19/22 21/20 22/23 24/25 27/12 27/17 29/2 29/9 29/9

29/14 30/6 30/9 30/21 30/22 32/8 32/15 32/24 34/7 34/21 35/12 35/13 36/11 36/13 38/7 40/25 42/5 42/6 42/7 43/12 43/19 44/16 45/6
there [50]
There's [1] 18/8
therefore [2] 10/2 10/5
these [24] 3/16 4/5 5/21 6/5 8/18 8/22 9/11 10/7 15/5 15/12 15/19 18/5 20/6 21/12 21/13 24/15 26/13 26/20 28/12 30/10 31/7 39/24 45/7
they [132]
they're [2] 8/20 17/19
they've [2] 15/5 21/4
thing [7] 13/3 18/4 22/3 24/20 35/14 35/16 40/8
things [5] 5/5 5/6 7/17 20/2 23/22 25/9 35/8 37/1 38/13 38/14 38/23 41/12
think [49]
thinking [5] 29/22 32/3 32/5 32/8 32/21
Third [2] 2/24 11/6
this [51]
those [27] 4/19 5/18 6/1 7/20 7/22 9/7 11/12 12/6 15/2 17/16 19/8 19/13 19/19 22/6 24/9 24/10 24/17 24/18 26/21 32/18 33/15 35/21 35/23 38/3 41/16 41/17 43/9
though [1] 45/25
thought [2] 23/18 30/23
thoughts [3] 29/24 37/9 37/13
thousands [1] 33/24
thread [1] 33/7
three [7] 14/20 14/20 15/10 15/16 42/15 42/21 43/2
three-year [1] 15/10
through [2] 33/14 34/22
time [31] 3/4 4/1 4/7 4/8 4/11 11/20 11/21 14/14 14/24 16/16 17/5 24/16 28/22 30/15 32/20 32/23 33/9 33/22 33/25 33/25 34/10 34/14 37/6 37/19 40/23 41/5 41/10 42/5 42/6 42/8 44/5
timely [1] 26/2
today [1] 46/5
together [3] 35/15 38/14 40/16
too [2] 7/5 25/9
top [2] 5/24
total [1] 14/21
toward [1] 26/7
track [1] 17/16
transcript [3] 1/11 47/5 47/6
travel [2] 44/14 44/15
treat [2] 6/1 7/24
treating [2] 7/18 9/2
tried [1] 17/9
truly [1] 26/22
try [4] 23/4 29/15 38/15 44/3
trying [1] 39/8
Tuesday [2] 44/5 44/19
turn [4] 12/8 30/22 34/4 37/7
two [11] 4/15 12/6 14/25 15/4 19/20 22/19 29/18 31/7 31/18 43/12 43/20
two-year [1] 15/4
type [1] 39/21
typical [1] 38/10
typically [1] 36/4

**U**

U.S [12] 1/6 2/5 3/7 12/17 12/19 13/5 15/1 15/13 30/3 31/4 31/22 32/3
ultimate [2] 30/24 42/19

**U**

unable [1]  15/17
under [13]  7/2 7/4 9/19 10/3 11/19
14/16 14/17 17/1 20/14 25/1 27/6 36/7
42/12
underlying [1]  40/15
understand [6]  8/13 16/25 20/16 22/11
25/8 28/14
understanding [6]  3/18 5/10 6/23 6/25
7/5 37/19
understands [1]  24/17
Understood [2]  8/1 21/3
undue [1]  5/12
unfair [4]  5/20 5/25 6/4 19/18
uniform [1]  9/4
UNITED [6]  1/1 1/13 9/13 14/15 14/20
31/17
United States [4]  9/13 14/15 14/20
31/17
unless [1]  37/4
unlike [1]  14/7
unlimited [1]  16/15
unnamed [3]  14/8 14/9 14/11
until [7]  4/7 34/10 37/15 37/17 37/23
43/15 45/21
up [4]  12/2 26/2 39/15 41/18
up-to-date [1]  26/2
upheld [1]  31/8
upon [1]  20/8
us [8]  8/2 28/3 31/14 37/12 38/20 39/3
39/25 43/22
USCIS [1]  38/17
USCIS' [1]  5/21
use [2]  15/17 26/24
using [2]  24/18 24/20
usually [2]  5/12 30/14

**V**

vacation [1]  44/4
valid [1]  25/11
versus [3]  3/7 14/18 16/24
very [19]  6/9 7/9 9/16 10/23 16/7 16/25
17/2 17/6 17/6 17/6 19/2 19/3 24/4
26/12 30/15 41/25 43/9 45/16 46/6
view [1]  38/22
violate [10]  11/22 30/4 30/7 30/9 31/1
32/11 32/14 32/15 39/1 40/20
violations [1]  7/2
visa [5]  3/16 4/9 14/5 14/11 15/20
visas [13]  4/9 9/18 11/19 12/4 12/22
13/1 15/6 15/19 19/8 19/19 29/12
33/14 33/15

**W**

wage [6]  15/9 24/16 24/20 24/24 25/5
26/3
wages [4]  15/7 24/18 25/2 25/5
wait [3]  15/21 23/25 37/16
want [47]  5/3 9/10 9/11 13/22 16/1
16/15 18/25 19/1 20/4 20/5 20/6 20/7
20/8 20/10 20/13 21/1 25/3 25/24
25/25 26/12 30/21 31/2 31/21 32/22
33/6 33/10 34/5 35/22 37/4 37/22
37/25 38/2 38/4 38/6 39/14 39/16
39/17 40/9 42/11 43/7 44/1 44/7 44/12
44/19 44/19 45/14 45/17
wants [3]  3/19 13/11 30/23 34/8 39/12
was [33]  3/23 4/7 4/8 4/14 4/16 4/17
4/20 4/21 5/4 5/12 5/16 6/3 6/6 6/6
9/23 10/7 10/11 10/12 10/13 10/21

24/16 26/17 33/5 33/20 39/24 39/24
Washington [1]  2/6
way [3]  3/17 4/24 7/16 19/24 20/21
28/15 29/5 34/13 34/22 35/1 35/2
36/10 37/19 38/25 41/12 42/3 42/17
44/3
we [117]
we're [7]  12/2 19/14 22/1 25/16 30/7
36/11 45/19
we've [1]  22/7
week [12]  9/17 21/5 29/16 29/17 35/12
37/24 40/13 40/24 40/25 43/21 43/23
44/3
weeks [8]  19/7 19/20 29/18 42/15
42/21 43/2 43/12 43/21
welcome [5]  6/12 16/2 16/4 29/23
42/17
well [13]  4/4 6/1 8/6 21/7 25/20 26/4
27/12 30/10 34/3 39/11 39/22 42/10
44/9
went [2]  4/14 8/25
were [3]  3/16 4/2 4/9 4/10 4/15 4/18
5/5 5/6 5/19 7/19 9/6 9/6 21/20 22/2
22/23 24/6 38/14 45/15
Westlaw [2]  10/17 10/19
what [45]  5/4 8/25 9/8 9/21 10/7 10/11
10/19 11/3 12/18 14/16 15/23 17/19
18/15 19/18 20/24 20/25 23/18 24/12
24/15 25/8 25/10 25/19 26/14 26/23
27/5 32/10 32/20 34/16 34/21 35/6
36/3 37/10 37/18 37/19 37/22 37/25
38/12 38/24 39/5 39/8 39/19 39/24
41/12 42/3 43/1
what's [6]  27/3 30/10 32/15 35/20
38/22 44/14
whatever [8]  8/13 8/14 28/21 36/17
36/19 44/18 44/21 46/2
whatsoever [1]  45/18
when [18]  4/18 5/22 9/12 11/14 12/5
16/16 17/2 17/3 24/25 25/15 30/15
31/2 35/22 41/5 41/16 42/1 42/8 43/19
whenever [2]  16/3 44/23
where [5]  4/25 9/17 20/8 23/19 33/13
whether [23]  3/18 8/6 9/18 10/6 22/7
22/16 22/24 22/25 25/1 27/19 29/3
29/20 30/2 30/18 30/18 30/24 31/22
32/10 33/4 35/19 39/14 40/13 40/19
which [22]  3/23 3/25 4/2 4/9 4/12 9/22
11/6 12/17 13/5 14/7 14/8 15/8 16/9
16/12 19/4 24/19 27/3 29/13 33/6
33/19 33/21 41/9
whichever [1]  8/12
while [4]  11/1 15/2 18/2 25/6
who [13]  4/19 9/6 9/25 12/21 13/6
14/25 15/16 16/11 17/1 17/4 17/19
18/5 22/6
whole [2]  12/3 21/18
why [12]  6/3 11/17 13/24 16/18 16/18
18/4 20/21 25/15 25/14 26/7 26/9 32/5
will [61]
win [2]  20/14 26/5
wind [1]  12/2
window [1]  4/22
winner [1]  19/7
winners [1]  20/5
wins [3]  36/10 36/13 36/22
winter [1]  44/23
withdraw [1]  6/22
within [12]  7/14 9/5 9/18 10/1 13/6

18/18 26/7 29/4 29/7 29/24 29/24
without [8]  14/6 17/18 35/2 37/21 41/14
41/15 42/10 47/6
won't [1]  33/23
word [2]  16/9 16/9
words [2]  5/5 16/10
work [9]  9/10 9/11 9/12 13/11 14/20
35/5 42/22 43/4 43/21
worker [6]  9/18 13/11 13/11 13/17
16/16 17/4
workers [20]  8/20 9/2 9/5 9/6 9/14 9/18
9/24 10/1 10/22 11/13 11/16 11/18
11/20 11/23 12/4 14/3 16/15 16/24
17/17 25/4
workforce [4]  16/14 16/22 25/6 25/7
worried [1]  33/25
worst [2]  20/10 36/7
worst-case [2]  20/10 36/7
would [53]
written [1]  7/15
wrong [4]  6/24 12/19 23/4 23/5
wrote [1]  12/18

**X**

Xiaoyang [1]  15/12

**Y**

Yates [1]  31/16
year [26]  4/2 4/3 4/4 4/5 4/7 4/11 4/17
4/23 15/4 15/9 15/10 19/6 19/14 20/3
21/12 24/7 24/13 24/21 24/25 26/23
27/2 29/1 31/15 33/18 33/19 36/8
Year's [1]  44/4
years [11]  12/2 13/6 14/20 14/20 14/21
14/22 14/25 15/7 15/16 22/5 31/7
yes [21]  3/21 5/9 6/8 6/15 6/16 11/12
12/14 13/22 21/14 21/25 27/11 27/11
33/20 40/22 42/24 42/25 43/6 43/8
43/17 43/18 44/13
yesterday [1]  6/19
yet [1]  12/3
you [135]
you'd [1]  44/15
you're [5]  6/12 16/1 16/4 16/4 29/23
you've [1]  25/19
your [69]
Your Honor [30]  3/4 5/9 5/22 6/19 8/1
8/10 11/12 16/25 18/6 18/25 19/9
19/19 20/18 21/14 21/25 24/4 24/17
27/16 28/3 28/6 37/10 37/14 38/1 38/5
38/13 39/6 39/22 40/22 41/7 44/10
Your Honor's [2]  28/9 38/18
yourselves [3]  34/6 35/5 35/22

**Z**

Zhu [1]  15/12
zone [22]  8/8 8/11 8/16 8/23 9/5 9/19
10/25 11/2 11/10 12/9 12/11 12/15
16/3 16/4 16/7 17/25 18/4 18/11 18/13
18/16 29/5 29/7
zone-of-interest [16]  8/8 8/11 8/16
10/25 11/10 12/9 12/11 16/3 16/4 16/7
17/25 18/4 18/11 18/13 29/5 29/7